74 P.3d 980

STATE of Hawai‘i, Plaintiff–Appellant,

v.

Alicia Anne BOHANNON,
Defendant–Appellee.

No. 24095.

Supreme Court of Hawai‘i.

Aug. 21, 2003.

As Amended Sept. 2, 2003.

Mangmang Qui Brown, deputy prosecuting attorney (Mangmang Qui Brown, on the brief), for the plaintiff-appellant State of Hawai'i.

Michael Green (Gary M. Levitt, on the brief), Honolulu, for the defendant-appellee Alicia Anne Bohannon.

LEVINSON, J., with whom MOON, C.J., Joins, and NAKAYAMA, J., Concurring Separately and Dissenting, and ACOBA, J., Dissenting, and Intermediate Court of Appeals Chief Judge BURNS, Assigned by Reason of Vacancy, Concurring Separately.

Opinion by LEVINSON, J., in which MOON, C.J., Joins, Announcing the Judgment of the Court.

The plaintiff-appellant State of Hawai'i [hereinafter, "the prosecution"] appeals from (1) the order of the district court of the first circuit, the Honorable Paula Devens presiding, file-stamped on January 25, 2001 but signed by Judge Devens on January 31, 2001, granting the defendant-appellee Alicia Anne Bohannon's motion to suppress items of evidence [hereinafter, "motion to suppress"] and oral motion to dismiss and (2) the order of the district court of the first circuit, the Honorable Paula Devens also presiding, file-stamped on December 11, 2000 but signed by Judge Devens on January 22, 2001, denying the prosecution's motion for reconsideration of the oral order granting Bohannon's motions to suppress and to dismiss.

On appeal, the prosecution contends that the district court erred in granting Bohannon's motion to suppress on the alternative grounds (1) that Honolulu Police Department (HPD) Officer Colby Kashimoto testified to sufficient "specific and articulable facts" to justify the investigative stop of Bohannon and (2) that the "public safety" and "community caretaking" exceptions to the warrant requirement justified the investigative stop because Officer Kashimoto had reasonable suspicion to believe that Bohannon was not operating her vehicle "in a safe and prudent manner." Bohannon responds that this court lacks jurisdiction to address the merits of the prosecution's appeal, the prosecution having failed to file a timely notice of appeal in the district court.

We hold that this court has jurisdiction to address the merits of the prosecution's appeal, inasmuch as the prosecution filed its notice of appeal within thirty days of the effective dates of both the written order granting Bohannon's motions to suppress and to dismiss and the written order denying the prosecution's motion for reconsideration, which was therefore timely pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b) (1999).[1] We further hold

---

1. HRAP Rule 4(b) provides in relevant part:
 **Appeals in Criminal Cases.**

 (1) *Time and Place of Filing.* In a criminal case, the notice of appeal shall be filed in the

that Officer Kashimoto had reasonable suspicion to stop Bohannon and, therefore, that the district court erred in granting Bohannon's motions to suppress and to dismiss. Accordingly, we vacate the district court's order granting Bohannon's motions to suppress and to dismiss and remand this matter to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

The present matter arises out of an incident that occurred on November 28, 1999, during which HPD Officer Kashimoto stopped Bohannon at the intersection of Kalākaua Avenue and Ala Wai Boulevard and subsequently arrested her for driving under the influence of intoxicating liquor, in violation of Hawai'i Revised Statutes (HRS) § 291-4 (Supp.1999).[2] The following evidence was adduced at the hearing on Bohannon's motion to suppress items of evidence obtained subsequent to the investigative stop (including the results of Bohannon's field sobriety test), conducted by the district court on May 26, 2000.

On November 28, 1999, at approximately 2:24 a.m., Officer Kashimoto was on routine patrol duty in the City and County of Honolulu. He stopped his vehicle, a three-wheeled Cushman, at the intersection of Kalākaua Avenue and Ala Wai Boulevard "in the makai[3] most lane" and waited for the traffic light to turn from red to green. Officer Kashimoto testified that, at the time of the subject incident, the area was well lit— i.e., that the overhead street lamps and Officer Kashimoto's headlights, back lights, and brake lights were all illuminated—and that there was nothing in the area to obstruct Bohannon's view of Officer Kashimoto's vehicle or the traffic lights ahead of her.

While Officer Kashimoto waited at the intersection, he heard the "screeching of tires coming from behind [his] vehicle"; the screeching sound persisted for approximately two seconds. Officer Kashimoto "immediately looked into [his] rear view mirror [and] observed [Bohannon's] vehicle trying to come to a screeching halt [in order] to avoid colliding into [his] vehicle."[4] Based on the fact that Bohannon's vehicle was close enough to Officer Kashimoto's vehicle that he was unable to see Bohannon's headlights, Officer Kashimoto surmised that Bohannon's vehicle had stopped "within two feet" of his vehicle.

... district ... court within 30 days after the entry of the judgment or order appealed from.
. . . .
(3) *Entry of Judgment or Order Defined.* A judgment or order is entered within the meaning of this subsection when it is filed with the clerk of the court.

2. HRS § 291-4 provided in relevant part:

**Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
 (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
 (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

Effective January 1, 2002, the legislature repealed HRS § 291-4 and replaced it with HRS § 291E-61. *See* 2000 Haw. Sess. L. Act 189, § 30 at 432.

3. "Makai" means "on the seaside, toward the sea, in the direction of the sea." M.K. Pukui & S.H. Elbert, *Hawai'ian Dictionary* 114 (Rev. Ed.1986). We are unable to determine from the record before us precisely on what street and in what direction Officer Kashimoto was driving at the time of the subject incident.

4. Officer Kashimoto further testified that, two weeks prior to the subject incident, he had been involved in a rear-end collision, during which he heard "the screeching of tires" immediately preceding the impact from the vehicle behind him. During argument, defense counsel posited that Officer Kashimoto's prior rear-end collision had possibly caused him to be "hypersensitive" to the sound of "screeching tires," the essential fact upon which he had based his reasonable suspicion to stop Bohannon. As discussed *infra* in section III.B, however, Officer Kashimoto's subjective state of mind was not ultimately dispositive of the question whether he possessed reasonable suspicion to stop Bohannon. *See State v. Bolosan*, 78 Hawai'i 86, 92, 890 P.2d 673, 679 (1995).

Officer Kashimoto further noted that there were no other vehicles in the immediate vicinity; for that reason, he activated his siren and "blue flashing" lights and circled around to Bohannon's vehicle in order to investigate whether she was operating her vehicle "in a safe and prudent manner."[5] Bohannon did not immediately respond to Officer Kashimoto's signal for her to pull over—*i.e.*, the flashing lights and siren—but "stayed exactly where she was [when] she came to a stop." Officer Kashimoto testified that Bohannon appeared to be "trying to figure out what was going on." After approximately ten seconds had elapsed, Bohannon maneuvered her vehicle around the corner onto Ala Wai Boulevard and stopped to speak with Officer Kashimoto.

At the hearing, the prosecution argued that, based on "specific and articulable facts"—*i.e.*, the good lighting, the screeching of Bohannon's tires for approximately two seconds, and her abrupt stop within two feet of Officer Kashimoto's vehicle—Officer Kashimoto had reasonable suspicion to believe that Bohannon was not operating her vehicle "in a safe and prudent manner" and, thus, was justified in stopping her to investigate the situation. The prosecution reminded the district court that, further to the "reasonable suspicion" standard applicable to investigative stops, Officer Kashimoto "did not have to actually see . . . a crime being committed." The district court granted Bohannon's motion to suppress, reasoning that "[t]he screeching of tires alone was not enough to justify [an investigative stop by] the police officer." Based on the district court's ruling, Bohannon orally moved to dismiss the case against her; the district court granted the motion.

It appears that, on May 26, 2000, the district court clerk recorded the foregoing dispositions on the traffic calender, the notation stating in relevant part as follows:

THE COURT .FOUND THAT THERE WAS NO .... REASONABLE SUSPI- CION FOR THE STOP. ATTY PHILLIPS FOR DISMISSAL—GRANTED BY THE COURT.

On June 13, 2000, the prosecution filed a motion for reconsideration of the order granting Bohannon's motion to suppress [hereinafter, "motion for reconsideration"].[6] On July 17, 2000, the district court conducted a hearing on the matter, during which the prosecution argued, for the first time, that the "public safety" exception to the warrant requirement applied to Officer Kashimoto's investigative stop. The district court denied the motion, remarking as follows:

> Alright. Well, the problem that the Court has is that the observation by [Officer Kashimoto] was ever so brief. He only testified to observing the two-minute [sic] screeching of tires and then observing [Bohannon] come to a screeching halt, stopping two feet behind [Officer Kashimoto's] vehicle. Had the officer continued to observe [Bohannon's] driving instead of pulling [her] over after the initial episode or had . . . [Officer Kashimoto] witnessed other actions that would have led a reasonable person to believe that [Bohannon] was a hazard to the public, perhaps[, under the] public safety justification[,] [Officer Kashimoto] could [have] stopped [Bohannon]. But what we have here is such a brief observation that . . . these facts could not lead a reasonable person to believe [that] there was reasonable concerns for public safety or that this vehicle was being driven . . . unsafe[ly] or [in an] imprudent manner.
>
> On these facts, the Court finds that a man of reasonable caution . . . would not be warranted in believing that criminal activity was afoot and the action taken was appropriate. The stop of [Bohannon] was not based on reasonable suspicion. The stop was improper. Reconsideration denied.

---

5. At the hearing on Bohannon's motion to suppress, Officer Kashimoto conceded that the "screeching of tires" was not, in and of itself, "against the law."

6. The prosecution's motion for reconsideration obviously addressed the district court's *oral* order granting Bohannon's motion to suppress, insofar as the district court did not sign its *written* order granting the motion until January 31, 2001.

It appears that, on the same day, the district court clerk recorded the foregoing disposition on the traffic calender, the notation stating in relevant part as follows:

HRG ON MOTION TO RECONSIDER ORDER GRANTING MOTION TO SUPPRESS ITEMS HAD .... MOTION DENIED BY THE COURT.

On December 11, 2000, the district court clerk file-stamped a written order denying the prosecution's motion for reconsideration, although the order reflects that Judge Devens signed it on January 22, 2001. On January 25, 2001, the district court clerk file-stamped a written order granting Bohannon's motion to suppress, although the order reflects that Judge Devens signed it on January 31, 2001.[7] On February 15, 2001, the prosecution filed a notice of appeal. Oral argument in the present matter was conducted on September 4, 2002.[8]

## II. STANDARDS OF REVIEW

### A. Jurisdiction

"The existence of jurisdiction is a question of law that we review *de novo* under the right/wrong standard." *Amantiad v. Odum*, 90 Hawai'i 152, 158, 977 P.2d 160, 166 (1999) (quoting *Lester v. Rapp*, 85 Hawai'i 238, 241, 942 P.2d 502, 505 (1997)) (internal quotation marks omitted). Regarding appellate jurisdiction, this court has noted,

[J]urisdiction is "the base requirement for any court resolving a dispute because without jurisdiction, the court has no authority to consider the case." *Housing Finance & Dev. Corp. v. Castle*, 79 Hawai'i 64, 76, 898 P.2d 576, 588 (1995). With regard to appeals, "[t]he remedy by appeal is not a common law right and exists only by virtue of statutory or constitutional provision." *In re Sprinkle & Chow Liquor License*, 40 Haw. 485, 491

(1954). Therefore, "the right of appeal is limited as provided by the legislature and compliance with the methods and procedure prescribed by it is obligatory." *In re Tax Appeal of Lower Mapunapuna Tenants' Ass'n*, 73 Haw. 63, 69, 828 P.2d 263, 266 (1992).

*TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999). *State v. Adam*, 97 Hawai'i 475, 481, 40 P.3d 877, 883 (2002).

### B. Motions To Suppress

"We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case.... Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations, some quotation signals, and some ellipsis points omitted). Accordingly, "[w]e review the circuit court's ruling on a motion to suppress *de novo* to determine whether the ruling was 'right' or 'wrong.'" *Id.* (citations and some quotation signals omitted).

*State v. Locquiao*, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002) (quoting *State v. Poaipuni*, 98 Hawai'i 387, 392, 49 P.3d 353, 358 (2002)).

### C. Statutory Interpretation

"[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura*, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata*, 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994) ....

*Gray v. Administrative Director of the Court*, 84 Hawai'i 138, 144, 931 P.2d 580,

---

7. It is common-sensical that an unsigned order is ineffective. That being the case, the written order denying the prosecution's motion for reconsideration did not become effective until January 22, 2001, when Judge Devens signed it. Likewise, the written order granting Bohannon's motions to suppress and to dismiss did not become effective until January 31, 2001.

8. Oral argument in the present matter took place prior to the retirement of Associate Justice Mario R. Ramil. Upon his retirement, this court issued an order, filed on March 5, 2003, assigning Intermediate Court of Appeals Chief Judge James S. Burns as a substitute justice.

586 (1997) (some brackets added and some in original). *See also State v. Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993). *State v. Rauch*, 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit*, 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker*, 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich*, 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998))))))).

## III. *DISCUSSION*

### A. *This Court Has Appellate Jurisdiction To Address The Merits Of The Prosecution's Appeal.*

As a threshold matter, Bohannon asserts that this court lacks jurisdiction to consider the prosecution's appeal. Relying on Hawai'i Rules of Penal Procedure (HRPP) Rule 32(c)(2) (1999),[9] Bohannon contends that the

---

9. HRPP Rule 32(c)(2) provides:

 **Sentence and judgment.**
 . . . .
 (c) *Judgments.*
 . . . .
 (2) IN THE DISTRICT COURT. A judgment of conviction in the district court shall set forth the disposition of the proceedings and the same shall be entered on the record of the court. The notation of the judgment by the clerk on the calendar constitutes the entry of the judgment.

 Effective July 1, 2000, HRPP Rule 44(b) (2000) governs orders and the entry of orders in the district court and provides in relevant part:

 **Settlement of findings of fact, conclusions of law, and order; entry of order.**
 . . . .
 (b) **In the district court.**
 (1) After the decision or ruling of the court following a hearing on a motion, the clerk shall note the decision or ruling on the calendar. The notation of the decision or ruling on the calendar shall constitute the order and the entry thereof. . . .

We note that HRPP Rule 32(c)(2) continues to govern judgments and the entry of judgments in the district courts. *State v. Graybeard*, 93 Hawai'i 513, 518 n. 5, 6 P.3d 385, 390 n. 5 (App. 2000) (recommending "that HRPP Rule 32(c)(2) be amended to expressly recognize a separate, filed judgment as the entry of judgment in the district courts, either as an alternative to the clerk's notation of the judgment on the court calendar or as the sole and exclusive method of entry of judgment"). Inasmuch as HRPP Rule 44(b)(1) was not in effect at the time the district court announced its oral order granting Bohannon's motions to suppress and to dismiss, it is inapplicable to the May 26, 2000 notation by the clerk on the traffic calendar. HRPP Rule 44(b)(1), however, was in effect on July 17, 2000, the time at which the district court announced its oral order denying the prosecution's motion for reconsideration; we discuss the applicability of HRPP Rule 44(b)(1) to the foregoing motion *infra* in section III.A.1.

prosecution failed to file its notice of appeal within thirty days from the clerk's notation in the traffic calender of the district court's oral orders (1) granting Bohannon's motion to suppress and (2) granting Bohannon's oral motion to dismiss. Bohannon argues that the May 26, 2000 notation constituted the order from which the prosecution should have appealed, pursuant to HRAP Rule 4(b)(1), and, therefore, that the prosecution's notice of appeal, filed on February 15, 2001, was untimely and mandates that this court dismiss the present appeal for lack of jurisdiction.

Bohannon further asserts that, because the prosecution's notice of appeal did not expressly refer to the district court's order denying its motion for reconsideration, the notice of appeal "is expressly limited to the order granting the motion to suppress." Bohannon maintains, assuming *arguendo* that the prosecution impliedly incorporated the district court's order denying its motion for reconsideration into its notice of appeal, the notice of appeal was nevertheless untimely pursuant to HRPP Rule 44(b)(1), which was in effect at the time the clerk noted the disposition of the foregoing motion in the traffic calendar.

The prosecution responds that the district court's *oral* statement granting Bohannon's motions to suppress and to dismiss, noted in the traffic calendar by the clerk on May 26, 2000, did not constitute an appealable order, pursuant to HRAP Rule 4(b)(1). Rather, the prosecution maintains that the *written* order granting Bohannon's motions to suppress and to dismiss, filed-stamped by the district court clerk on January 25, 2001 and signed by Judge Devens on January 31, 2001, constituted the "entry" of the orders within the meaning of HRAP Rule 4(b)(1) and for purposes of appeal and, thus, that the prosecution's notice of appeal, filed on February 15, 2001, was timely. Moreover, the prosecution argues that, inasmuch as there was no "judgment of conviction" in the present matter, HRPP Rule 32(c)(2) is inapplicable to the present appeal altogether.

Finally, with respect to Bohannon's contention that the district court's order denying the prosecution's motion for reconsideration

was outside the scope of its notice of appeal, the prosecution asserts (1) that "the very subject matter of the motion to reconsider was the propriety of the court's . . . order granting the motion to suppress" and (2) that the prosecution's "right to appeal from the order granting [Bohannon's] motion to suppress under HRS [§ ] 641–13(7) . . . encompasses a right to appeal from the . . . order denying [its] motion to reconsider [the district court's] order granting the motion to suppress." We agree with the prosecution.

■■ "A court always has jurisdiction to determine whether it has jurisdiction over a particular case." *State v. Brandimart*, 68 Haw. 495, 496, 720 P.2d 1009, 1010 (1986); *State v. Graybeard*, 93 Hawai'i 513, 516, 6 P.3d 385, 388 (App.2000) ("An appellate court has . . . an independent obligation to ensure jurisdiction over each case and to dismiss the appeal *sua sponte* if a jurisdictional defect exists."). Moreover, "compliance with the requirement of the timely filing of a notice of appeal[, as set forth in HRAP Rule 4(b)(1),] is jurisdictional." *Id.* at 497, 720 P.2d at 1010; *Graybeard*, 93 Hawai'i at 516, 6 P.3d at 388 ("An appellant's failure to file a timely notice of appeal is a jurisdictional defect which cannot be waived by the parties or disregarded by the court in the exercise of its discretion.").

For purposes of the present matter, we address the following two questions: (1) whether HRPP Rule 32(c)(2), *see supra* note 9, HRPP Rule 44(b)(1), *see supra* note 9, or HRAP Rule 4(b)(1), *see supra* note 1, triggered the time period within which the prosecution was required to file its notice of appeal and (2) whether the time for the prosecution's filing of its notice of appeal began to run on (a) May 26, 2000, being the date on which the district court clerk noted on the traffic calendar the district court's oral statement granting Bohannon's motions, (b) July 17, 2000, being the date on which the district court clerk noted on the traffic calendar the district court's oral statement denying the prosecution's motion for reconsideration, (c) January 22, 2001, being the date on which the district court signed its written order denying the prosecution's motion for reconsideration, or (d) January 31, 2001, be-

ing the date on which the district court signed its written order granting Bohannon's motions to suppress and to dismiss.

### 1. HRAP Rule 4(b) Governs The Timing Requirement For Appeals In All Criminal Cases.

■ We note at the outset that HRPP Rule 32(c)(2), *see supra* note 9, by its plain language, is inapplicable to the present matter. The rule expressly provides in relevant part that "[t]he notation of the *judgment* by the clerk on the calendar constitutes the entry of the judgment." (Emphasis added.) Inasmuch as Bohannon's case never proceeded to a judgment of conviction, the district court having granted Bohannon's motion to suppress and thereafter having granted her oral motion to dismiss the case against her, there was simply no judgment of conviction from which the prosecution could have filed a notice of appeal. Accordingly, the May 26, 2000 notation of the district court's oral statement granting Bohannon's motions to suppress and to dismiss by the clerk on the traffic calendar is irrelevant to the disposition of the present matter. The applicability of HRPP Rule 44(b)(1), however, requires a preliminary determination as to whether the prosecution's notice of appeal subsumed the district court's oral order denying its motion for reconsideration, noted by the clerk in the traffic calendar on July 17, 2000.

■ A notice of appeal must be both sufficient in form and timely. *See City and County of Honolulu v. Midkiff,* 57 Haw. 273, 275–76, 554 P.2d 233, 235 (1976). With respect to the first mandate, this court has consistently recognized that "the requirement that the notice of appeal designate the judgment or part thereof appealed from is not jurisdictional." *Id.* at 275, 554 P.2d at 235 (citations omitted). Further to the foregoing,

> a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should *not* result in loss of the appeal as long as *the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake.*

*Id.* at 275–76, 554 P.2d at 235 (quoting 9 *Moore's Federal Practice* 203.18 (1975)) (emphases added).

■ In the present matter, the prosecution's notice of appeal did not expressly refer to the district court's order denying its motion for reconsideration, instead stating only that "the State intends to contest the propriety of the Order Granting Motion to Suppress Items of Evidence . . . ." We believe, however, that the prosecution's intent to appeal from the district court's order denying its motion for reconsideration can be reasonably inferred from its notice of appeal, inasmuch as the district court's order denying the motion for reconsideration was merely an extension of its order granting Bohannon's motions to suppress and to dismiss. Bohannon has asserted no persuasive argument that the failure expressly to include the district court's order denying the motion for reconsideration in the prosecution's notice of appeal was "misleading . . . to [her] detriment." *Midkiff,* 57 Haw. at 276, 554 P.2d at 235. That being the case, we hold that the prosecution's notice of appeal "is sufficient in form," *id.,* for purposes of an appeal from the district court's written order denying its motion for reconsideration, signed by the district court on January 22, 2001.

■ With respect to the timeliness of the prosecution's notice of appeal, we must first resolve the apparent conflict between HRPP Rule 44(b)(1) and HRAP Rule 4(b). HRAP Rule (4)(b), which governs the time for filing appeals in criminal cases, provides in relevant part that "[a] judgment or order is entered within the meaning of this subsection when it is filed with the clerk of the court." *See supra* note 1. Moreover, HRAP Rule 4(b)—which, by its plain language, makes no distinction between proceedings in the district or circuit courts—requires that a *final and appealable* judgment or order in criminal cases be in *written* form. *See State v. Ho,* 7 Haw.App. 516, 518–19, 782 P.2d 29, 31 (1989) (construing HRAP Rule 4(b) (1985)), *overruled on other grounds* in *State v. Hoey,* 77 Hawai'i 17, 30, 881 P.2d 504, 516 (1994).

The State is authorized to appeal from a pre-trial order granting a motion to sup-

press evidence by HRS § 641–13(7) (Supp. 1988). In *State v. Johnson*, 50 Haw. 525, 445 P.2d 36 (1968), the supreme court held that Revised Laws of Hawai'i (RLH) 1955 § 212–2, which is now § 641–13, must be strictly construed.... We hold that the same rule of strict construction applies to the Rule 4(b) HRAP requirement that the State must file its notice of appeal within 30 days of the entry of the judgment or order appealed from. *The State can only appeal from a written order or judgment filed with the clerk. Absent a written order of suppression, the State's notice of appeal in this case did not give rise to appellate jurisdiction.* [Citation omitted.]

*Id.* (footnote and citation omitted) (emphasis added).

By contrast, HRPP Rule 44(b)(1), which, as mentioned *supra* in note 9, was in effect at the time the district court announced its oral order denying the prosecution's motion for reconsideration, provides in relevant part that "[t]he notation of the decision or ruling on the calendar shall constitute the order and the entry thereof." HRPP Rule 44(b)(1) prescribes the procedure by which an order becomes *final* in the district courts; the order, however, does not become *appealable* until a separate written order has been filed with the clerk of the court in accordance with HRAP Rule 4(b)(3).[10] Accordingly, we hold that, in order to appeal a criminal matter in the district court, the appealing party must appeal from a *written* judgment or order that has been filed with the clerk of the court pursuant to HRAP Rule 4(b)(3).

2. *The Prosecution Filed A Timely Notice Of Appeal, Pursuant To HRAP Rule 4(b).*

 It is well settled that "the right of appeal in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision." *State v. Oshiro*, 69 Haw. 438, 441, 746 P.2d 568, 570 (1987). HRS § 641–13 (1993) enumerates the "instances" in which the prosecution may appeal a criminal case from the district and circuit courts, including, *inter alia*, appeals

from "an order ... sustaining a motion to dismiss," *see* HRS § 641–13(1), appeals from "an order ... dismissing the case where the defendant has not been put in jeopardy," *see* HRS § 641–13(2), and appeals from "a pre-trial order granting a motion for the suppression of evidence," *see* HRS § 641–13(7). Inasmuch as the district court granted Bohannon's motions to suppress and to dismiss, the prosecution had the statutory right to appeal the district court's disposition.

With respect to the timeliness of the prosecution's notice of appeal, HRAP Rule 4(b)(1), *see supra* note 1, which sets forth the "time and place of filing" a notice of appeal, prescribes that "the notice of appeal shall be filed in the ... district ... court within 30 days after the entry of the judgment or order appealed from." HRAP Rule (4)(b)(3), *see supra* note 1, further provides that "[a] judgment or order is entered within the meaning of [HRAP Rule 4(b)(1)] when it is filed with the clerk of the court." In the present matter, the record reflects that the prosecution filed its notice of appeal on February 15, 2001. We need not reach the question whether the January 22, 2001 written order denying the prosecution's motion for reconsideration, on the one hand, or the January 31, 2001 written order granting Bohannon's motions to suppress and to dismiss, on the other, triggered the thirty-day appeal period prescribed by HRAP Rule 4(b)(1), because the prosecution's notice of appeal was filed well within thirty days of both of the written orders. Accordingly, the prosecution's notice of appeal was timely, and this court has jurisdiction to address the merits of its appeal.

B. *HPD Officer Kashimoto Had Reasonable Suspicion To Stop Bohannon, And, Thus, The District Court Erred In Granting Bohannon's Motions To Suppress And To Dismiss.*

 The prosecution argues that Officer Kashimoto's testimony at the hearing on Bohannon's motion to suppress established the "specific and articulable facts" to support his belief that Bohannon was operating

10. Likewise, a photocopy or other replication of the clerk's notation of the decision or ruling on

the district court calendar does not satisfy the dictate of HRAP Rule 4(b)(3).

her vehicle in an unsafe and imprudent manner. The prosecution asserts that the district court erred in relying on "[t]he screeching of tires alone" in its determination that there was no reasonable suspicion to justify Officer Kashimoto's investigative stop, because Officer Kashimoto made several other observations, which, under the totality of the circumstances, established reasonable suspicion to stop Bohannon. Specifically, the prosecution contends that, in addition to the two seconds of screeching tires, Officer Kashimoto observed that (1) Bohannon's vehicle was required to come to a "screeching halt" in order to avoid colliding with the officer's Cushman, (2) Bohannon had nearly rear-ended Officer Kashimoto's Cushman by coming to a complete stop within only two feet of it, (3) the distance between Officer Kashimoto's Cushman and Bohannon's vehicle was so small that Officer Kashimoto was unable to see Bohannon's headlights, and (4) as described *supra* in section I, Bohannon's "screeching halt" had caused Officer Kashimoto "to release his brake to move his vehicle forward" in order to "maintain [a] sufficient distance." Based on the foregoing observations, the prosecution maintains that "Officer Kashimoto's concern for at least his own safety prior to his stop of [Bohannon's] car[ ] was objectively reasonable," thereby justifying stopping Bohannon to investigate the situation.

Bohannon responds that the district court correctly granted her motion to suppress, because the prosecution had failed to meet its burden of overcoming the presumption of an unreasonable seizure by establishing that Officer Kashimoto's investigative stop fell within a well-recognized exception to the warrant requirement. Bohannon contends that the prosecution "did not claim that the 'specific facts' gave rise to reasonable suspicion that [Bohannon] was engaged in any criminal law or traffic violation" and that Officer Kashimoto conceded at Bohannon's

motion to suppress hearing "that the screeching of brakes was not against the law." In our view, Officer Kashimoto had reasonable suspicion to stop Bohannon.

■■■ "A stop of a vehicle for an investigatory purpose constitutes a seizure within the meaning of the constitutional protection against unreasonable searches and seizures[,]" as guaranteed by the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution.[11] *State v. Bolosan,* 78 Hawai'i 86, 92, 890 P.2d 673, 679 (1995).

In determining the reasonableness of wholly discretionary automobile stops, this court has repeatedly applied the standard set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). [Citations omitted.] Guided by *Terry,* we stated in *State v. Barnes* [, 58 Haw. 333, 568 P.2d 1207 (1977) ]:

> To justify an investigative stop, short of arrest based on probable cause, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra* [392 U.S.], at 21 [88 S.Ct. 1868]. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate. 58 Haw. at 338, 568 P.2d at 1211 (citations omitted).

*State v. Powell,* 61 Haw. 316, 321–22, 603 P.2d 143, 147–48 (1979).

*Id.* (some brackets added and some omitted).

Measured by the foregoing standard, Officer Kashimoto's investigative stop of Bohannon was lawful. While we agree with Bohannon, as did Officer Kashimoto, that the

---

11. The fourth amendment to the United States Constitution provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." Article I, section 7 of the Hawai'i Constitu-

tion provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause . . . ."

"screeching of tires," in and of itself, did not constitute an offense within the HRS and, therefore, could not, without more, provide the basis for the requisite reasonable suspicion to stop Bohannon, the officer's additional observations, considered in concert with the reasonable inferences arising from the "screeching of tires," warranted an objectively reasonable suspicion that Bohannon had, at a minimum, committed the offense of reckless driving of a vehicle, in violation of HRS § 291–2 (Supp.1999).[12] Despite the fact that Officer Kashimoto articulated his suspicion in terms of an apparent failure to drive "in a safe and prudent manner," the foregoing traffic statutes essentially embrace Officer Kashimoto's reasonable concerns at the time of the subject incident. Thus, viewing the present matter from the totality of the circumstances known to Officer Kashimoto at the time of the incident, we hold that his investigative stop of Bohannon was "within the parameters of permissible police conduct," *Barnes*, 58 Haw. at 337, 568 P.2d at 1211, and, consequently, that the district court erred in granting Bohannon's motions to suppress and to dismiss.[13]

### IV. *CONCLUSION*

Based on the foregoing discussion, we vacate the district court's order granting Bohannon's motions to suppress and to dismiss and remand this matter for further proceedings consistent with this opinion.

Concurring and Dissenting Opinion by NAKAYAMA, J.

I agree that this court has appellate jurisdiction to address the merits of the prosecution's appeal for the reasons stated in section III A of the majority opinion. I disagree, however, with the majority's conclusion that Officer Kashimoto had reasonable suspicion to stop Bohannon. Thus, for the reasons

that follow, I respectfully dissent as to section III B of the majority opinion.

Article I, section 7 of the Hawai'i Constitution was designed, *inter alia*, to safeguard the privacy of individuals against arbitrary, oppressive, and harassing invasions by the police. *State v. Trainor*, 83 Hawai'i 250, 259, 925 P.2d 818, 827 (1996) (citation omitted). To ensure against such invasions, this court has applied an objective reasonable suspicion test in the event of an investigatory automobile stop by the police. *See State v. Bolosan*, 78 Hawai'i 86, 94, 890 P.2d 673, 681 (1995) ("[W]e hold that an investigative stop can be justified based on an objectively reasonable suspicion[.]").

Under this test, an investigating police officer must point to "specific and articulable facts warranting a reasonable belief that criminal activity is afoot." *Trainor*, 83 Hawai'i at 259, 925 P.2d at 827 (citations, ellipsis, and brackets omitted). Whether articulated facts support an objective belief of ongoing criminal activity involves evaluating the totality of the circumstances. *Kernan v. Tanaka*, 75 Haw. 1, 38, 856 P.2d 1207, 1226 (1993). The key in such an analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Id.* at 37, 856 P.2d at 1225 (citations omitted).

Under the circumstances as articulated by Officer Kashimoto in this case, I do not believe that Bohannon's actions supported an objectively reasonable belief that criminal activity was afoot. The facts articulated by Officer Kashimoto indicate that, during the early morning hours, at the intersection of Kalākaua Avenue and Ala Wai Boulevard, Bohannon came to an abrupt stop within two feet of Officer Kashimoto's vehicle, resulting in a two-second screeching of tires. The totality of these circumstances is insufficient to warrant an invasion into an individual's

12. HRS § 291–2 provides in relevant part that "[w]hoever operates any vehicle ... recklessly in disregard of the safety of persons or property is guilty of reckless driving of vehicle ... and shall be fined not more than $1,000 or imprisoned not more than thirty days, or both."

13. In light of our disposition herein, we need not and do not address the prosecution's argument

that, notwithstanding that Officer Kashimoto had reasonable suspicion to stop Bohannon's vehicle, the so-called "public safety" and "community caretaking" exceptions to the warrant requirement apply to the present matter and, therefore, that the district court erred in denying its motion for reconsideration of the oral order granting Bohannon's motions to suppress and to dismiss.

personal security. To hold otherwise, would be tantamount to permitting arbitrary investigatory automobile stops that the safeguards in article I, section 7 of the Hawai'i Constitution were intended to protect against. Based on the foregoing, I respectfully dissent as to section III B of the majority opinion.

### Dissenting Opinion by ACOBA, J.

I disagree with the majority's holding that this court has jurisdiction over the appeal, and because I conclude that this court lacks jurisdiction, I do not address the merits of the appeal.[1] *See Price v. Obayashi Hawai'i Corp.,* 81 Hawai'i 171, 174–75, 914 P.2d 1364, 1367–68 (1996) ("'Jurisdiction is the base requirement for any court considering and resolving an appeal or original action. Without jurisdiction, a court is not in a position to consider the case further.'" (Quoting *Wong v. Wong,* 79 Hawai'i 26, 29, 897 P.2d 953, 956 (1995) (citations omitted))).

I believe a reasoned *in pari materia* interpretation of Hawai'i Rules of Appellate Procedure (HRAP) Rules 2.1(a), 4(b)(1), and 4(b)(3) and Hawai'i Rules of Penal Procedure (HRPP) Rule 2 would deem the notation of the court's order on the court calendar by the clerk as the entry of the order and, therefore, tantamount to the filing thereof so as to satisfy HRAP Rule 4(b)(3).[2] Thus, unlike the majority, I am of the opinion that a party may appeal from a final order that is noted on the district court's calendar, and that the time for appeal commences at that point rather than from a separate written judgment that *may be filed at any time.*

I believe this interpretation best comports with simplicity, fairness, and the elimination of unjustifiable expense and delay. The majority's approach of requiring a separate written judgment to be filed is contrary to an *in pari materia* reading of the relevant rules, the import of past precedent, and reason. The course chosen by the majority will cause an increased burden upon the district courts, counsel, the Intermediate Court of Appeals, and this court. In light of past practice, it is likely that nearly every district court case in which a final order is appealed from will have to be remanded for entry of a judgment in the form of a separate document, causing substantial delay and expense. Moreover, because the majority approach allows the filing of a separate judgment to be done at any time, it permits manipulation of the appeals process by one party to the substantial detriment of the opposing party and is thus inimical to the fair administration of the rules.

Applying an *in pari materia* approach, I would hold that the appeal of Plaintiff–Appellant State of Hawai'i (the prosecution) from the January 31, 2001 order of the district court of the first circuit (the court) granting the motion to suppress evidence filed by Defendant–Appellee Alicia Anne Bohannon (Defendant), and its January 22, 2001 order denying reconsideration was untimely because the time for appeal ran from May 26, 2000, the date the court's order was entered on the court's calendar, and not from the date of a separate written order filed with the clerk some eight months later.[3] Justice Ramil, who retired on December 30, 2002 and had heard oral argument in this case, had joined in this position.

### I.

Prior to trial in this case, Defendant moved to suppress all evidence obtained after the unlawful stop of her car. The court found that the prosecution failed to meet its burden of bringing the seizure of Defendant

---

1. Oral argument in this case was held on September 4, 2002.

2. This is analogous to the procedure set forth in HRPP Rule 32(c)(2), *see infra* page 6, as to the entry of a judgment of conviction in the district court and is the procedure set forth for entry of orders in criminal cases in the district court in HRPP Rule 44(b)(1) which became effective during the pendency of this case. *See infra* Part VI.B.

3. I would follow the same rationale with respect to a judgment of conviction as entered on the district court calendar pursuant to HRPP Rule 32(c)(2), rather than require the filing of a separate judgment of conviction as the majority has required. *See State v. Misuraca,* No. 25426 (July 28, 2003) (unpublished order for remand) (Acoba, J., dissenting) ("I do not agree that this appeal is premature and need be remanded to the district court for entry of a written judgment according to [HRAP] Rule 4(b)(3), inasmuch as [HRPP] Rule 32(c)(2) applies.").

within a recognized exception to the warrant requirement. On May 26, 2000, the court granted Defendant's motion to suppress and dismissed the case by decision and oral order. The court clerk made a notation of the decision on the court calendar on the same day. There were no rules applicable to criminal cases in the district court that required the court to make findings of fact or conclusions of law at the time and no findings or conclusions of law are in the record on appeal.

The prosecution did not appeal from the May 26, 2000 notated order but, instead, moved for reconsideration of the court's order on June 13, 2000. In its motion for reconsideration, the prosecution, for the first time, argued that the arresting officer's actions in this case fit within the "public safety" exception to the warrant requirement and advocated adoption of this exception.

The court orally denied the motion for reconsideration on July 17, 2000, and the clerk entered the order on the court calendar. A written order denying the motion for reconsideration was later filed on December 11, 2000 and signed on January 22, 2001 (the January 22, 2001 order). The written order granting the motion to suppress was filed on January 25, 2001 and signed on January 31, 2001 (the January 31, 2001 order), after the order denying reconsideration. On February 15, 2001, the prosecution appealed.

On appeal, Defendant contends, *inter alia*, that the prosecution's appeal was untimely because the prosecution was required to appeal within thirty days of the clerk's notation on the court's calendar on May 26, 2000, pursuant to HRPP Rule 32(c)(2) (2000). Defendant maintains that, inasmuch as the prosecution did not appeal until February 15, 2001, eight months and ten days later, its appeal was late.

On the other hand, the prosecution argues that its notice of appeal was timely filed on February 15, 2001. According to the prosecution, the filing with the court clerk of the January 22, 2001 written order denying the

motion for reconsideration and the January 31, 2001 written order granting the motion to suppress "constituted 'entry' of the orders for purposes of [HRAP Rule 4(b)(1) ][.]" [4] As such, the prosecution asserts that its February 15, 2001 notice of appeal, "filed within 30 days after entry of the above orders, was timely."

## II.

It is well established that the interpretation of rules promulgated by the supreme court involves principles of statutory construction. *See State v. Lei*, 95 Hawai'i 278, 281, 21 P.3d 880, 884 (2001); *State v. Lau*, 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995); *Keaulii v. Simpson*, 74 Haw. 417, 421, 847 P.2d 663, 666, *reconsideration denied*, 74 Haw. 650, 853 P.2d 542, *cert. denied*, 510 U.S. 814, 114 S.Ct. 61, 126 L.Ed.2d 31 (1993). "The interpretation of a statute is a question of law which this court reviews de novo." *Konno v. County of Hawai'i*, 85 Hawai'i 61, 71, 937 P.2d 397, 407 (1997) (quoting *State v. Toyomura*, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995) (citation omitted)). Therefore, the interpretation of HRPP Rule 32 (2000) and HRAP Rule 4 is a question of law reviewable *de novo*.

## III.

HRPP Rule 32(c) directs that, in the district court, judgments of conviction are deemed entered by the notation of the judgment on the court calendar. In relevant part, Rule 32(c)(2) provides that

[a] *judgment of conviction* in the district court shall set forth the disposition of the proceedings and the same shall be entered on the record of the court. *The notation of the judgment by the clerk on the calendar constitutes the entry of the judgment.*

(Emphases added.) As stated, *supra*, principles of statutory construction apply to the interpretation of court rules. The language of HRPP Rule 32(c)(2) is "plain and unambiguous." Applying its "plain and obvious

---

4. HRAP Rule 4(b)(1) states:
 **(b) Appeals in Criminal Cases.**
 (1) *Time and Place of Filing.* In a criminal case, the notice of appeal shall be filed in the circuit, district, or family court within 30 days *after the entry of the judgment or order appealed from.*
 (Emphasis added.)

meaning[,]" Rule 32(c)(2) applies only to judgments of conviction. *See Konno*, 85 Hawai'i at 71, 937 P.2d at 407 ("[W]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." (Citations omitted.)). Here, Defendant was not convicted, and, thus, no judgment of conviction was entered. Therefore, HRPP Rule 32(c)(2) does not apply to the case at bar.

### IV.

On the other hand, HRAP Rules 2.1(a), 4(b)(1), 4(b)(3), and HRPP Rule 2 are relevant to this case and rules upon the same subject matter should be construed with reference to each other. *Cf.* HRS 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another."); *Canalez v. Bob's Appliance Serv. Ctr., Inc.*, 89 Hawai'i 292, 306, 972 P.2d 295, 310 (1999) (taking an *in pari materia* reading of HRS § 607-9 and Hawai'i Rules of Civil Procedure Rule 68).

### A.

As previously indicated, HRAP Rule 4(b)(1) provides that a notice of appeal in criminal cases must be filed within thirty days of the order appealed from. *See supra* note 4. HRAP Rule 4(b)(3) explains that an order is deemed entered when it is filed with the clerk. "A judgment or order is entered within the meaning of [HRAP Rule 4(b)(1) ] when it is filed with the clerk of the court." HRAP Rule 4(b)(3). HRAP Rule 2.1(a) (2001) incorporates other court rules into the HRAP, including the HRPP.[5] HRPP Rule 2 sets forth the purposes and principles for construction of the HRPP.

These rules are intended to provide for the *just* determination of every penal proceeding. They shall be construed to secure *simplicity* in procedure, *fairness* in

administration and the elimination of *unjustifiable expense and delay.*

HRPP Rule 2 (2000) (emphases added). Insofar as the HRPP may be treated as part of the HRAP "whenever applicable," it is reasonable to consider the purposes set forth in HRPP Rule 2 in construing the HRAP as it relates to criminal case appeals from the district court. In that light, the prosecution's urging that an order appealed from is deemed "entered" for purposes of HRAP Rule 4(b)(1) when a separate order is filed with the district court conflicts with the purposes stated in HRPP Rule 2.

The clerk entered the court's decision and order on the court calendar on May 26, 2000. The making of such a notation plainly "secure[d] *simplicity* in procedure[.]" HRPP Rule 2 (emphasis added); *see generally* HRPP Rule 50 ("The district and circuit courts may provide for placing criminal proceedings upon appropriate calendars."); *cf. State v. Nishi*, 9 Haw.App. 516, 526, 852 P.2d 476, 481 (1993) ("[A] district court judgment consists of the clerk's notation on the court's daily calendar containing numerous cases." (Citing HRPP Rule 32(c)(2).)).

Employing this notation procedure also avoids unjustifiable expense and delay because it promotes efficiency in the district court, where the caseload is a heavy one. *See State v. Graybeard*, 93 Hawai'i 513, 517, 6 P.3d 385, 389 (App.2000) (stating that "[t]he simple expedien[cy] permitted by HRPP Rule 32(c)(2) [in the district court] subserves . . . the goal of efficiency in a court that carries a multitude of cases").

Finally, the notation procedure which establishes a firm date from which to measure appeal time as of the rendering of the court's order promotes fairness in the administration of the rules. By contrast, the majority's approach allows for manipulation of the date of filing an appeal without any timely connection to the court's actual decision. Under the

---

**5.** HRAP Rule 2.1 states as follows:

The Hawai'i Rules of Civil Procedure, the *Hawai'i Rules of Penal Procedure*, the District Court Rules of Civil Procedure, the Rules of the Circuit Courts, Hawai'i Family Court Rules, Rules of the Land Court, Rules of the Tax Appeal Court, Rules Governing Court Re-

porting, the Hawai'i Appellate Conference Program Rules, and other rules of court that may be adopted by the supreme court from time to time *are hereby adopted as a part of these rules whenever applicable.*

(Emphases added.)

majority's holding, a party would be able to suspend the filing of an appeal, irrespective of when the district court rendered its decision, as long as it appealed within thirty days of the date the separate order was eventually filed.

As mentioned, the court, by decision and order of May 26, 2000, suppressed the evidence obtained in the search and dismissed the case against Defendant. The prosecution did not appeal the May 26, 2000 oral order, but instead moved for reconsideration. On July 17, 2000, the court denied the prosecution's motion for reconsideration. *Five months later*, on December 11, 2000, the prosecution filed a document it had prepared entitled "Order Denying Motion to Reconsider Order Granting Motion to Suppress Evidence." *Eight months after* the May 25, 2000 Order, on January 25, 2001, the prosecution filed another document entitled "Order Granting Motion to Suppress Items of Evidence." Finally, *nearly nine months after* the court rendered its decision by order of May 26, 2000, on February 15, 2001, the prosecution appealed from the January 31, 2001 order.[6]

## B.

The notation procedure satisfies HRAP Rule 4(a)(3) since the entry of the order is tantamount to a filing of the order. Like the filing of a separate document with the clerk, a notation by the clerk establishes a record

of the decision.[7] Because the notation of an order by the court clerk constitutes the entry thereof, it is functionally equivalent to filing a separate document with the clerk, as envisioned in HRAP Rule 4(b)(3).[8] *Cf. Child Support Enforcement Agency v. Roe*, 96 Hawai'i 1, 15, 25 P.3d 60, 74 (2001) (holding that the unequivocal notification by a court to a party of a discovery requirement that the court expects that party to obey, under appropriate circumstances, is "treated as the functional equivalent of an order compelling discovery"); *LeMay v. Leander*, 92 Hawai'i 614, 623, 994 P.2d 546, 555 (2000) (concluding that a violation of an injunction, by definition, is the functional equivalent of contempt); *Casumpang v. ILWU, Local 142*, 91 Hawai'i 425, 427, 984 P.2d 1251, 1253 (1999) ("[A]n order that fully disposes of an action in the district court may be final and appealable *without the entry of judgment on a separate document*, as long as the appealed order ends the litigation by fully deciding the rights and liabilities of all parties and leaves nothing further to be adjudicated." (Emphasis added.)); *State v. Miyashiro*, 90 Hawai'i 489, 492, 979 P.2d 85, 88 (App.1999) (determining that a court's response to a jury communication is the functional equivalent of an instruction).

In light of the parallel purpose served by the notation procedure, an order may be deemed "entered" and, thus, "filed" in the district court for the purpose of HRAP Rule

---

**6.** It is clear that if the majority's approach is utilized and the time for appeal begins to run only from the filing of a written judgment, the time for appeal can be manipulated. In this case, according to the majority's definition of judgment, the court's judgment on the prosecution's motion for reconsideration was filed on December 11, 2000 and signed on January 22, 2001, *before the judgment dismissing the case and suppressing evidence*, which was filed on January 25, 2001 and signed on January 31, 2001. Obviously, the judgment dismissing the case and suppressing the evidence should precede the motion for reconsideration.

**7.** The statutes appear to contemplate that criminal appeals from the district court shall be from the record. HRS § 641–12 (1993), which pertains to appeals from the district courts, provides in pertinent part that

"*[a]ppeals upon the record* shall be allowed from all final decisions and final judgments of

the district courts in criminal matters. Such appeals may be made to the supreme court . . . *whenever the party appealing shall file a notice of the party's appeal within 30 days*, or such other time as may be provided by the rules of court."

(Emphases added.) The plain language of this statute indicates that an appeal is from the record. This construction is further buttressed by HRS § 641–11 (1993), which contrastingly states, regarding appeals from the circuit court, that "[a]ny party deeming oneself aggrieved by the judgment of a circuit court in a criminal matter, may appeal to the supreme court, subject to chapter 602 in the manner and within the time provided by the Hawai'i Rules of Appellate Procedure."

**8.** This application of HRAP Rule 4(b)(3) is consistent with the recent amendment of HRPP Rule 44(b)(1) (effective July 1, 2000). *See infra* note 10.

4(b)(3), when the clerk notes the order on the court calendar.[9] Thus, the requirements of HRAP 4(b)(3) are not ignored, but the entry of an order by the clerk on the court calendar is treated as the functional equivalent of the filing of such an order, on the rationale discussed above.

In light of the foregoing, and under the conditions prevalent in the district court, the notation procedure is the method that maintains simplicity, avoids unjustifiable delay and expense, and promotes "fairness in administration."[10] HRPP Rule 2.

## V.

### A.

With all due respect, I do not find the majority's position persuasive. The majority states that "HRAP Rule 4(b) ... requires that a *final and appealable* judgment or order in criminal cases be in written form." Majority opinion at 235, 74 P.3d at 987 (citing *State v. Ho*, 7 Haw.App. 516–19, 782 P.2d 29, 31 (1989), *overruled on other grounds by*, *State v. Hoey*, 77 Hawai'i 17, 30, 881 P.2d 504, 516 (1994)) (emphasis added). The *Ho* case dealt not with a "final and appealable judgment," but with the issue of "whether the 108–day delay occasioned by the State's *interlocutory appeal* from the lower court's oral suppression order is excludable under ... [HRPP R]ule [48]." *Ho*, 7 Haw.App. at 518, 782 P.2d at 30 (emphasis added) (footnote omitted). Second, HRAP Rule 4(b) does not in any way state that the order entered and appealed from must be in a *separate* document as the majority holds. Third, here, the clerk made a notation on the court calendar, *which is in "written" form* pursuant to the court's order and, as such,

was tantamount to the filing of such an order in satisfaction of HRAP Rule 4(b)(3).

### B.

The majority notes that HRPP Rule 44(b)(1) "was in effect on July 17, 2000, the time at which the district court announced its oral order denying the prosecution's motion for reconsideration[.]" Majority opinion at 236, 74 P.3d at 988. HRPP Rule 44(b)(1) would apply to all orders entered by the district court after the rule's effective date of July 1, 2000. HRPP 44(b)(1) states as follows: "After the decision or ruling of the court following a hearing on a motion, the clerk shall note the decision or ruling on the calendar. *The notation of the decision or ruling on the calendar shall constitute the order and entry thereof.*" (Emphasis added.) Thus, if the order granting the motion to suppress in the present case was issued subsequent to the effective date of HRPP Rule 44(b)(1), that rule would control.

Given a plain reading of Rule 44(b)(1), the time for appeal would begin to run upon the clerk's notation on the court calendar. Such notation under the rule constituted not only the order, but the "entry thereof." It would make no sense to require an order already entered to be again subsequently "filed." Therefore, I do not find compelling the majority's contention that although HRPP Rule 44(b)(1) "prescribes the procedure by which an order becomes final in the district courts[,] the order ... *does not become appealable until a separate written order has been filed* with the clerk of the court in

---

9. Alternatively, this court could waive the HRAP Rule 4(b)(3) provision, by applying HRAP Rule 2, which states as follows:

 *In the interest of expediting a decision,* or for other good cause shown, *either Hawai'i appellate court may suspend the requirements or provisions of any of these rules* in a particular case on application of a party or *on its own motion* and may order proceedings in accordance with its direction.

 (Emphases added.) In view of the number of cases that will be affected, I would, in the alternative, apply HRAP Rule 2. But, a majority of this court has refused this approach. *See Misuraca*, No. 25426 (July 28, 2003) (unpublished order for remand). The delay accompanying the majority's approach and the increased burden upon this court and the district court is patent.

10. As mentioned, findings of fact and conclusions of law were not filed in this case. In line with the notation procedure, had the court decided to enter findings of fact and conclusions of law, orally or in written form, that entry should have been made prior to or along with its order.

 After July 1, 2000, pursuant to HRPP Rule 44(b)(2), if the court entered findings of fact, conclusions of law, and an order, the filing of such would constitute entry of the order.

 Where the court orders preparation of findings of fact, conclusions of law and order, the findings, conclusions and order shall be prepared and settled as provided for in subsection (a) of this rule. The filing of the findings, conclusions and order in the office of the clerk shall constitute entry of the order.

 HRPP Rule 44(b)(2).

accordance with HRAP Rule 4(b)(3)." Majority opinion at 236, 74 P.3d at 988 (footnote and emphases omitted) (emphasis added). A plain language reading of HRPP Rule 44(b)(1) yields no indication that a separate written order must be filed. Rather, the entry in fact constitutes such filing under HRAP Rule 4(b)(3). The majority cites no authority for its dicta with respect to HRPP Rule 44(b)(1).

Of course, although discussed by the majority, it *is of no consequence* that HRPP Rule 44(b)(1) was in effect at the time the prosecution's motion for reconsideration was denied because the motion did not toll the time for appeal. A motion for reconsideration is not a tolling motion.[11] The majority's discussion of Rule 44(b)(1) as requiring the separate filing of an order is therefore a gratuitous one.

### VI.

Here, the court announced the order granting the motion to suppress and dismissing the case on May 26, 2000. The clerk noted the decision and order on the court calendar on the same day. In my view, the order therefore should have been appealed within thirty days of May 26, 2000. Insofar as the prosecution did not appeal from the court's order on or prior to June 25, 2000, the thirtieth day after the order's entry, I believe its notice of appeal filed on February 15, 2001 was untimely. Consequently, I would hold that this court lacks jurisdiction. *See* HRAP Rule 4(b)(3); *Security Pac. Mortgage Corp. v. Miller,* 71 Haw. 65, 71, 783 P.2d 855,

858 (1989) (stating that "[the supreme] court's jurisdiction is limited to review of issues within the parameters of the orders from which *timely appeal* is taken" (emphasis added)); *see e.g., State v. Irvine,* 88 Hawai'i 404, 405, 967 P.2d 236, 237 (1998) ("dismiss[ing an] appeal for lack of jurisdiction because the certification order and the notice of interlocutory appeal [were] untimely"); *Oppenheimer v. AIG Hawai'i Ins. Co.,* 77 Hawai'i 88, 881 P.2d 1234 (1994) (appeal dismissed because notice of appeal was not filed within 30 days of order confirming arbitration award); *Scott v. Liu,* 46 Haw. 221, 377 P.2d 696 (1962) (reviewing court was without jurisdiction to hear appeal which was not taken within prescribed time), *rehearing denied,* 46 Haw. 289, 378 P.2d 880 (1963).

### VII.

Based on the foregoing reasons, the prosecution's appeal should be dismissed.

### Concurring Opinion by Intermediate Court of Appeals Chief Judge BURNS.

I agree with the conclusion "that Officer Kashimoto had reasonable suspicion to stop Bohannon and, therefore, that the district court erred in granting Bohannon's motions to suppress and to dismiss."

Although I agree with the conclusion "that this court has jurisdiction to address the merits of the prosecution's appeal," I differ with the analysis stated by Justice Levinson.

Currently, the traffic calendar is a computer printout. Regarding each defendant

---

11. The prosecution states that "[t]he motion for reconsideration was the continuing proceeding of the motion to suppress. Inasmuch as the State has the right to appeal from the order granting the motion to suppress under H.R.S. [s]ection 641-13(7) [1993], that right encompasses a right to appeal from the subsequent order denying the State's motion to reconsider said order granting the motion to suppress." (Emphasis omitted.) (Emphasis added.) The prosecution is mistaken. It must appear from the order granting the motion to suppress. In *State v. Brandimart,* 68 Haw. 495, 720 P.2d 1009 (1986), this court held that a motion to reconsider filed by the prosecution under HRPP Rule 47 following the granting of a motion to suppress does *not* toll the time for appeal of the suppression order. The *Brandimart* court reasoned:

Rule 47 of HRPP is silent as to any tolling of time for filing a notice of appeal. Under Rule 4(b) of HRAP, *only a timely motion* in arrest of judgment or for a new trial is a tolling motion.
. . . .
 HRAP and HRPP are silent as to whether [a] motion [for reconsideration] tolls the thirty (30) day period for filing a notice of appeal. In the absence of an express statement to the contrary, *we hold that the motion for reconsideration is not a tolling motion.*

*Id.* at 497, 720 P.2d at 1010 (emphases added). Under *Brandimart,* the prosecution's motion for reconsideration is not a tolling motion. Therefore, the motion for reconsideration on June 13, 2000 did not toll the time for appeal of the trial court's oral order.

whose case is being heard on that day, the printout contains all prior entries into the computer regarding past actions in the case. At each hearing, the court clerk writes or types on the traffic calendar, in the section pertaining to the defendant, the court's decision(s) in the defendant's case. This amended traffic calendar is not filed. Subsequently, often days later, this decision information is typed into the computer under the defendant's case number for the record and future retrieval.

The May 26, 2000 traffic calendar and the July 17, 2000 traffic calendar allegedly in the record on appeal are copies of printouts of the relevant pages of the traffic calendar after the information regarding the court's decisions on those days in those cases had been typed into the computer. I say "allegedly in the record on appeal" because, although these printout copies were transmitted by the district court to the appellate courts as part of the record on appeal, there is no indication they were ever "filed" in the district court. None of these printout copies have been file-stamped. Therefore, according to Hawai'i Rules of Appellate Procedure (HRAP) Rule 10 (2003) [1], these printout copies are not a part of the record on appeal.

In this case, the only evidence of the alleged facts that "on May 26, 2000, the district court clerk recorded the foregoing dispositions on the traffic calendar[,]" and that, on July 17, 2000, "the district court clerk recorded the foregoing disposition on the traffic calendar" are the printout copies. Nevertheless, for purposes of further discussion in the remainder of this opinion, I will assume that the printout copies are a part of the record on appeal.

In criminal cases, motions for reconsideration are not tolling motions. It follows that the prosecution's June 13, 2000 motion for reconsideration had no impact on the appealability of the May 26, 2000 order.

Assuming that the May 26, 2000 order was entered in the district court within the meaning of the Hawai'i Rules of Penal Procedure (HRPP) (2003), the question is whether it was entered within the meaning of HRAP Rule 4(b) so as to trigger the thirty-day time period for the filing of a notice of appeal. In light of the definition of "entered" stated in HRAP Rule 4(b)(3), the answer is no because it was not "filed with the clerk of the court." Therefore, the thirty-day time period to file a notice of appeal did not commence.

The July 17, 2000 order was not appealable when entered within the meaning of HRPP Rule 44(b)(1) (1993) because it was not entered within the meaning of HRAP Rule 4(b)(3).

Both the July 17, 2000 order and the December 11, 2000/January 22, 2001 order were not appealable when entered within the meaning of HRPP Rule 44(b)(1) because they merely denied the prosecution's motions for reconsideration. A denial of a motion for reconsideration is not appealable prior to entry of the order sought to be reconsidered. In the absence of an appealable order granting the motion to dismiss and dismissing the case, neither order was appealable when entered.

The January 31, 2001 order was appealable when filed and was validly appealed by the February 15, 2001 notice of appeal. This valid appeal of the January 31, 2001 order allowed a challenge of the December 11, 2000/January 22, 2001 order. *State v. Hirano*, 8 Haw.App. 330, 332 n. 3, 802 P.2d 482, 484 n. 3 (1990).

The majority's opinion concludes "that, in order to appeal a criminal matter in the district court, the appealing party must appeal from a *written* judgment or order that has been filed with the clerk of the court pursuant to HRAP Rule 4(b)(3)." Note that the word "written" is not used anywhere in HRAP Rule 4(b)(3). In my view, the "filed" requirement makes the "written" require-

---

1. Hawai'i Rules of Appellate Procedure Rule 10(a) (2003) states, in relevant part, as follows:
 The record on appeal shall consist of the following:
 (1) the original papers filed in the court or agency appealed from;
 (2) written jury instructions given, or requested and refused or modified over objection;

 (3) exhibits admitted into evidence or refused;
 (4) the transcript of any proceedings prepared pursuant to the provisions of Rule 10(b);
 (5) in a criminal case where the sentence is being appealed, a sealed copy of the presentence investigation report; and
 (6) the indexes prepared by the clerk of the court appealed from.

246

ment unnecessary. I am unaware of any other kind of judgment or order that can be "filed." Moreover, the "written" requirement is not an issue. The issue is whether either of the following would satisfy HRAP Rule 4(b)(3): (a) the filing of the traffic calendar with the court clerk's written or typed disposition entries on it or (b) the filing of a copy of the relevant computer printout pages of the traffic calendar after the disposition information has been typed into the computer.

In my view, as long as HRAP Rule 4(b)(3) requires a "filed" "judgment or order", we need a document, signed by the judge and file-stamped, that states the relevant information. A copy of this document can be given to the defendant and will be the source of the unofficial information in the computer.