**\*\*\* FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-22-0000260
03-JAN-2024
09:20 AM
Dkt. 11 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

STATE OF HAWAI‘I,
Petitioner/Plaintiff-Appellant,

vs.

DYLAN RIVER JAMES,
Respondent/Defendant-Appellee.

SCWC-22-0000260

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000260; CASE NO. 5CPC-20-0000051)

JANUARY 3, 2024

RECKTENWALD, C.J., McKENNA, AND EDDINS, JJ.,
AND CIRCUIT JUDGE CATALDO AND CIRCUIT JUDGE MALINAO,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

The State of Hawai‘i ("the State") appeals a pretrial

suppression order of the Circuit Court of the Fifth Circuit

("circuit court"). The circuit court[1] suppressed text message evidence in the sexual assault prosecution of defendant Dylan River James ("James"). During an interview of the complaining witness ("CW"), police detectives directed her to contact James to discuss the incident. CW tried to call James while with the officers, but James did not pick up. CW later texted James, who responded; James apparently made admissions during the text conversation with CW.

The circuit court granted James's motion to suppress the text messages, reasoning (1) CW was acting as a government agent when she texted James; therefore (2)(a) James's rights against self-incrimination under the federal and Hawai'i constitutions were violated because no Miranda warnings were given; and (b) James's rights to counsel under the federal and Hawai'i constitutions were violated because he was not advised of his right to counsel. The circuit court also denied the State's motion for reconsideration.

The State appealed and the ICA affirmed. State v. James, No. CAAP-22-0000260, 2023 WL 3017974 (Haw. App. Apr. 20, 2023) (SDO). The ICA held that pursuant to the bright-line rule of State v. Ketchum, 97 Hawai'i 107, 34 P.3d 1006 (2001), Miranda warnings were required before James was "interrogated" because

_____

[1] The Honorable Randal G.B. Valenciano presided.

probable cause existed at the time CW texted James. James, 2023 WL 3017974, at *6 (citing State v. Hewitt, 153 Hawai'i 33, 36, 526 P.3d 558, 561 (2023)). The ICA did not address the right to counsel issue. 2023 WL 3017974, at *1 n.4. The ICA also held it lacked appellate jurisdiction over the circuit court's denial of the State's motion for reconsideration. 2023 WL 3017974, at *1 n.1.

The circuit court and ICA erred. Under the Fifth Amendment to the United States Constitution and article I, section 10 of the Hawai'i Constitution, Miranda warnings are only required for "custodial" interrogations. Although CW was acting as a government agent, James was not "in custody" when there was no stop or detention or other deprivation of his freedom of action by law enforcement.

Therefore, there was no custodial interrogation requiring Miranda warnings and advisement of a right to counsel. The circuit court also erred by suppressing the texts based on James's Sixth Amendment and Hawai'i Constitution article I, section 14 right to counsel. At the time of the text exchange, adversarial judicial criminal proceedings had yet to be initiated against James. Therefore, his right to counsel had not attached.

We also hold that the ICA erred by concluding it did not have appellate jurisdiction over the circuit court's order

denying the State's motion for reconsideration. The State's right to appeal from an order granting a defendant's motion to suppress under Hawai'i Revised Statutes ("HRS") § 641-13(7) (2016) "encompasses a right" to appeal from a related order denying the State's motion for reconsideration. See State v. Bohannon, 102 Hawai'i 228, 234, 74 P.3d 980, 986 (2003).

Hence, we vacate the ICA's May 31, 2023 judgment on appeal as well as the circuit court's March 28, 2022 findings of fact, conclusions of law and order granting motion to suppress text messages ("FOF/COL/Order") and April 4, 2022 order denying the State's motion for reconsideration. We remand to the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Factual background

On July 2, 2015, James allegedly sexually assaulted CW. Later that day, Kaua'i Police Department detectives Ray M. Takekawa ("Detective Takekawa") and Darren Rose ("Detective Rose") (together, "the detectives") interviewed CW.

At the end of the interview, the detectives directed CW to contact James to discuss the alleged sexual assault. CW was recorded saying to the detectives, "Wait. So, like, first I should just, like, get him to admit that we, like, had sex and then after that be like, well, I was like –" CW then tried to call James, but he did not pick up. CW asked the detectives,

4

"Do I leave a message?"  Detective Takekawa responded, "You want to try a text?" and Detective Rose said, "Give it a few minutes, about five minutes, and we'll try one more time."  CW tried to call James a second time but he did not pick up.

CW then texted James.  James responded with various texts to CW about the incident.  Among other things, he apparently admitted they had sex and that it was "rough."[2]

B.    **Grand jury proceedings**

CW testified about the above events to a grand jury. On March 11, 2020, the grand jury returned an indictment charging James with five counts of sexual assault in the first degree in violation of HRS § 707-730(1)(a) (2014).[3]

---

[2]    CW texted James that she was "thinking about the other night."  During the course of their text conversation, James stated, "I do remember it being very rough."  When CW later texted, "You really don't take no for an answer," James responded,

> Woah!  I couldn[']t tell if you were being serious or no[t] to be honest . . .  Thought it was some kind of 'role playin[g'] or something?  Sorry about that, [I] was a li[ttle] confused about that as well . . . .
>
> . . . .
>
> When you were screaming and crawling away by the lifeguard tower . . .  Couldn[']t tell if you were serious or w[h]at was goin[g on].  I was pretty confused . . .  And sorry to put you in that situation, [it] wasn[']t my intention at the time[.]

[3]    HRS § 707-730(1)(a) provided:  "(1) A person commits the offense of sexual assault in the first degree if:  (a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]"

5

## C. Circuit court proceedings

### 1. Motion to suppress text messages

On December 21, 2021, James filed a motion to suppress the text messages between James and CW ("motion to suppress"). Defense counsel initially argued the texts should be suppressed because the Fourth Amendment to the U.S. Constitution and article I, section 7 of the Hawai'i Constitution ensure an "individual's legitimate expectations of privacy will not be subjected to unreasonable governmental intrusions."

Citing State v. Kahoonei, 83 Hawai'i 124, 925 P.2d 294 (1996), James argued that, under the totality of the circumstances, CW was acting as a government agent at the time she texted James. James characterized CW's texts as "pretext calls." "Pretext calls" are calls "made by a witness at the direction of the police to a suspect or somebody else involved in the investigation. The investigators tape-record the telephone conversation and instruct the witness on what to say. The detectives use pretext calls to gather evidence and/or incriminating statements." People v. Wahlert, 31 Cal. Rptr. 3d 603, 614 (Ct. App. 4th Div. 2005) (cleaned up). James cited the Montana Supreme Court's opinion in State v. Stewart, 291 P.3d 1187, 1198 (Mont. 2012). According to James, Stewart held "'pretext calls' made by the complainant to the defendant at the direction of a detective had violated the defendant's right to

6

privacy under the Montana constitution" because they constituted state action.[4]

## 2. Hearing on and oral order granting James's motion to suppress

At the February 24, 2022 hearing on the motion to suppress, the circuit court cited Kahoonei, which held that whether a private individual was acting as a government agent when effectuating a search is to be analyzed under a "totality of circumstances." 83 Hawai'i at 131-32, 925 P.2d at 301-02 (holding a defendant's mother was a government agent when she retrieved a firearm and ammunition from her son's bedroom in an officer's presence after an officer told her a search warrant could be obtained and a search would inevitably occur). The circuit court concluded CW was acting as a government agent, and orally granted James's motion to suppress.

---

[4]  As noted in Stewart, the Montana Supreme Court had held in State v. Allen, 241 P.3d 1045 (Mont. 2010), that a defendant has a reasonable expectation of privacy in a cellular telephone conversation with a confidential police informant, and that the warrantless recordation of the conversation violated defendant's Montana constitutional right to privacy. Stewart, 291 P.3d at 1195. In other words, Montana, along with 14 other states, requires consent of all parties to a conversation for a warrantless recordation. See, e.g., Stewart, 291 P.3d at 1195. In contrast, Hawai'i is one of 36 states that does not require a search warrant when one party to a face-to-face or telephonic conversation consents to recordation. See, e.g., State v. Graham, 70 Haw. 627, 780 P.2d 1103 (1989) (holding the recording of a private conversation with the consent or cooperation of a participant is not subject to constitutional regulation). See generally Recording Phone Calls and Conversations: 50-State Survey, JUSTIA (Jan. 2018), https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/ [https://perma.cc/529D-8XGR].

### 3.   Order granting James's motion to suppress

On March 28, 2022, the circuit court issued its FOF/COL/Order.

The circuit court's conclusions of law ("COLs") were that:

> 3.   Under the totality of the circumstances, the governmental involvement in this case was significant and extensive enough to render CW an instrumentality of the State, i.e. a government agent, when she called and texted [James].  Kahoonei, 83 Hawai'i at 132, 925 P.3d at 302. . . .
>
> 4.   At the point when CW called and texted [James], he was the only suspect and the investigation had focused on him.  If the detectives had sought to question [James] at that point they would have been required to advise him of his rights, including his right to remain silent and his right to an attorney, and obtain a waiver of those right[s] prior to proceeding with the questioning.  Miranda v. Arizona, 384 U.S. 436 . . . (1966); State v. Santiago, 53 Haw. 254, 266, 492 P.2d 657, 665 (1971).
>
> 5.   As CW was acting as a government agent when she called and texted [James], the actions of the detectives violated James['s] right to an attorney under the [S]ixth [A]mendment to the U.S. Constitution and article I, section 14 of the Hawai'i Constitution and [James's] right to remain silent under the Fifth Amendment and article I, section 10.

Thus, although the circuit court relied on Kahoonei, which was a Fourth Amendment and article I, section 7 warrantless search case, the circuit court based its suppression ruling on alleged violations of James's Fifth Amendment and article I, section 10 right against self-incrimination and Sixth Amendment and article I, section 14 right to counsel.

### 4.   The State's motion for reconsideration

On February 28, 2022, the State had filed a motion to reconsider the circuit court's oral ruling ("motion for reconsideration").  The State argued that even if CW was acting

8

as a State agent, the content of the text messages was admissible. It argued James had no reasonable expectation of privacy in his text message exchange with CW, even if she was acting as a State agent, so the text messages should not have been suppressed.

The State pointed out that in Graham, 70 Haw. 627, 780 P.2d 1103, this court held a recorded private conversation with the consent of one party (otherwise known as "consensual eavesdropping" or "participant monitoring") was not a constitutional violation. The State also cited to State v. Roy, 54 Haw. 513, 510 P.2d 1066 (1973), in which this court held there was no unconstitutional search or seizure where an undercover government agent entered a private home to purchase marijuana by invitation but without a warrant. Similar to the defendants in those cases, the State argued, James had no reasonable expectation of privacy in his text message exchange with CW, even if she was acting as a State agent, so the text messages should not have been suppressed.

James's memorandum in opposition to the State's motion for reconsideration distinguished Graham, and changed his position to argue he was not asserting a violation of his right to

privacy.[5]  Rather, James said he was asserting a violation of his rights to counsel and to remain silent, since the police "used CW to attempt to avoid the constitutional constraints placed upon them if they had conducted a custodial interrogation." James also distinguished this case from Roy, arguing that in Roy, unlike here, "there was no requirement that the defendant be advised of his rights by police."

James argued Kahoonei, 83 Hawai'i at 131, 925 P.2d at 301, "held that the police cannot actively recruit a private individual to engage in conduct which the police would have been prohibited from doing."  James argued that at the time of the text messages, the detectives' investigation had focused solely on him as a suspect, and they already had probable cause to arrest James based on CW's statements, so "any questioning of James conducted by the detectives would have constituted

---

[5]     James initially based his motion to suppress on Fourth Amendment and article I, section 7 grounds.  In concluding James's Miranda rights were violated, the circuit court cited case law construing these constitutional provisions.  Because the issue is not properly before us, we do not address whether James had a reasonable expectation of privacy in his text messages. We note that State v. Walton, 133 Hawai'i 66, 93-97, 324 P.3d 876, 903-07 (2014), overruled some Hawai'i cases holding information voluntarily disclosed to third parties automatically loses article I, section 7 privacy protection; Walton also set forth factors courts should consider in determining whether a defendant has a legitimate expectation of privacy that information provided to a third party would not be shared with others, including whether that information reveals "intimate details of a person's life."  133 Hawai'i at 96-97, 324 P.3d at 906-07.  But consent to a search provides an exception to the warrant requirement; the record suggests CW consented to the detectives reading her text exchange with James.  It is not appropriate, however, for this court to determine as a matter of law the presence and scope of consent when it was not litigated in the trial court.  See State v. Phillips, 138 Hawai'i 321, 351, 382 P.3d 133, 163 (2016).

'custodial interrogation,'" and the detectives would have been required to advise James of his rights.  James argued that, based on the totality of the circumstances, CW was acting as a government agent when she texted James.  Therefore, James maintained, the detectives violated James's right to remain silent under the Fifth Amendment of the U.S. Constitution and article 1, section 10 of the Hawai'i Constitution.

James also asserted the detectives' actions violated his right to counsel under the Sixth Amendment to the U.S. Constitution and article 1, section 14 of the Hawai'i Constitution.

At the hearing on the State's motion for reconsideration, the State pointed out that "there is no precedent in Hawai'i or anywhere else that a defendant is in custody, [when] he is miles away from the police [and] not incarcerated, even assuming . . . that the police possess probable cause to arrest."

On April 4, 2022, the circuit court entered an order denying the State's motion for reconsideration.

**D.  ICA proceedings**

On April 11, 2022, the State filed a notice of appeal to the ICA.  The State asserted the circuit court erred (1) by finding CW induced James via text message to admit he had sexually assaulted her (FOF 7); (2) in concluding the detectives violated James's <u>Miranda</u> rights under the federal and/or Hawai'i

11

constitutions because it is undisputed that James was not in police custody (COL 4); (3) in concluding the detectives violated James's right to counsel under the federal and/or Hawai'i constitutions because James had not yet been charged; (4) by suppressing James's text messages sent to CW's phone; and (5) by denying the State's motion to reconsider.

In its April 20, 2023 summary disposition order, the ICA affirmed the circuit court's order granting James's motion to suppress. James, 2023 WL 3017974, at *7.

Relevant here, the ICA determined it did not have appellate jurisdiction over the circuit court's order denying the State's motion for reconsideration; hence, it did not address the State's point of error concerning that order.[6] 2023 WL 3017974, at *1 n.1. The ICA reasoned that in civil cases, under Hawai'i Rules of Appellate Procedure ("HRAP") Rule 4(a)(3) (eff. 2020), a notice of appeal is "deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order." James, 2023 WL 3017974, at *1 n.1 (quoting HRAP Rule 4(a)(3)). HRAP Rule 4(b) (eff. 2020) governing

---

[6] The ICA concluded the circuit court's FOF 7, that CW induced James via text message to admit he had sexually assaulted her, was not clearly erroneous. James, 2023 WL 3017974, at *5. This point is not at issue on certiorari.

appeals from criminal cases, however, does not contain a similar provision.  *James*, 2023 WL 3017974, at *1 n.1.

The ICA noted *Miranda* warnings are required when a defendant is (1) under interrogation and (2) in custody.  *James*, 2023 WL 3017974, at *6 (citing *State v. Ah Loo*, 94 Hawai'i 207, 210, 10 P.3d 728, 731 (2000)).  The ICA then said *Hewitt* held *Miranda* warnings are required by article 1, section 10 of the Hawai'i Constitution whenever probable cause to arrest has developed.  *James*, 2023 WL 3017974, at *6 (citing *Hewitt*, 153 Hawai'i at 36, 526 P.3d at 561).  The ICA noted the State does not dispute the text messages constituted "interrogation" or the circuit court's finding that at the time of the interrogation, James was the "only suspect" and the investigation had "focused on him."  *Id.*  The ICA concluded that the detectives therefore had probable cause to arrest James at the time of the text messages and that *Miranda* warnings were required before interrogation.  *James*, 2023 WL 3017974, at *6.

The ICA also addressed the State's assertion that the text messages should not have been suppressed because James received the texts from CW, not law enforcement.  *Id.*  The ICA reasoned the State's position was inconsistent with the purposes of Hawai'i's exclusionary rule.  *Id.*  Quoting *State v. McKnight*, 131 Hawai'i 379, 398, 319 P.3d 298, 317 (2013), the ICA noted that the exclusionary rule's purposes include "(1) judicial

13

integrity, (2) the protection of individual privacy, and (3) deterrence of illegal police misconduct." James, 2023 WL 3017974, at *6. The ICA determined that these purposes are not furthered by allowing circumvention of Miranda warnings by permitting law enforcement to engage in the undercover interrogation of suspects by directing the sending and dictating the content of text messages using a government agent's personal mobile device. James, 2023 WL 3017974, at *6.

Because the ICA concluded the circuit court properly suppressed the text messages based on article I, section 10 of the Hawai'i Constitution, the ICA declined to address point of error (3) concerning James's right to counsel. James, 2023 WL 3017974, at *1 n.4.

**E. Certiorari proceedings**

The State presents the following two questions on certiorari: whether the ICA gravely erred by concluding (1) Miranda warnings were required before CW, at police suggestion, sent text messages to James, "who was neither in proximity to a police officer nor confined in a correctional facility"; and (2) that it did not have appellate jurisdiction over the State's motion for reconsideration.

## III. Standards of Review

### A.    Appellate jurisdiction

"The existence of [appellate] jurisdiction is a question of law and is reviewed de novo under the right/wrong standard." State v. Uchima, 147 Hawaiʻi 64, 72, 464 P.3d 852, 860 (2020) (citation omitted).

### B.    Motion to suppress

"An appellate court reviews a ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong.'" Hewitt, 153 Hawaiʻi at 40, 526 P.3d at 565 (cleaned up).

### C.    Constitutional issues

"Questions of constitutional law are reviewed under the right/wrong standard." State v. Borge, 152 Hawaiʻi 458, 464, 526 P.3d 435, 441 (2023) (citation omitted).

### D.    Interpretation of statutes and court rules

"The interpretation of a statute [or court rule] is a question of law which this court reviews de novo." State v. Mortensen-Young, 152 Hawaiʻi 385, 392, 526 P.3d 362, 369 (2023) (cleaned up).  Our statutory interpretation is guided by the following principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to

> ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

State v. Abihai, 146 Hawai'i 398, 406, 463 P.3d 1055, 1063 (2020) (citation omitted).

"When interpreting rules promulgated by the court, principles of statutory construction apply." Mortensen-Young, 152 Hawai'i at 392, 526 P.3d at 369 (citation omitted).

## IV. Discussion

### A. Miranda warnings were not required because James was not "in custody" at the time of his text exchange with CW

The State correctly asserts the circuit court and ICA erred in concluding Miranda warnings were required before CW texted James at the detectives' suggestion.

The Fifth Amendment to the U.S. Constitution and article I, section 10 of the Hawai'i Constitution guarantee the right against self-incrimination. Hewitt, 153 Hawai'i at 43, 526 P.3d at 568 (citation omitted). Miranda warnings help safeguard this right:

> The Miranda rule is, at core, a constitutionally prescribed rule of evidence that requires the prosecution to lay a sufficient foundation — i.e., that the requisite warnings were administered and validly waived before the accused

16

> gave the statement sought to be adduced at trial — before it may adduce evidence of a defendant's custodial statements that stem from interrogation during [their] criminal trial.
>
> The prosecution's burden of establishing that the requisite warnings were given, however, is not triggered unless the totality of the circumstances reflect that the statement it seeks to adduce at trial was obtained as a result of "custodial interrogation," which, as the United States Supreme Court defined it in Miranda, consists of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of their freedom of action in any significant way." In other words, the defendant, objecting to the admissibility of their statement and, thus, seeking to suppress it, must establish that their statement was the result of (1) "interrogation" that occurred while they were (2) "in custody."

Hewitt, 153 Hawai'i at 43, 526 P.3d at 568 (cleaned up).

Under the federal constitution, Miranda warnings are required when a suspect is subjected to "custodial interrogation," which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." United States v. Eide, 875 F.2d 1429, 1433 (9th Cir. 1989) (cleaned up). James was not in custody or otherwise deprived of his freedom of action in any significant way. Thus, James was not "in custody" for Fifth Amendment purposes and Miranda warnings were not required by the federal constitution.

This court provides criminal defendants with greater protection under Hawai'i's article I, section 10 privilege against self-incrimination than provided by the federal courts

under Miranda and its progeny. Hewitt, 153 Hawai'i at 44, 526 P.3d at 569 (citation omitted). Our Miranda rights case law, however, has consistently adhered to the two foundational requirements for Miranda rights to be triggered: "interrogation" and "in custody." See, e.g., Ah Loo, 94 Hawai'i at 210, 10 P.3d at 731 (citation omitted).

The ICA misconstrued Hewitt and its reference to Ketchum, in which we held a person is "in custody" for the purposes of Miranda rights under article I, section 10 of the Hawai'i Constitution:

> [I]f an objective assessment of the totality of the circumstances reflects either (1) that the person has become impliedly accused of committing a crime because the questions of the police have become sustained and coercive, such that they are no longer reasonably designed briefly to confirm or dispel their reasonable suspicion or (2) that the point of arrest has arrived because either (a) probable cause to arrest has developed or (b) the police have subjected the person to an unlawful "de facto" arrest without probable cause to do so.

Hewitt, 153 Hawai'i at 43, 526 P.3d at 568 (quoting Ketchum, 97 Hawai'i at 126, 34 P.3d at 1025).

The circuit court and ICA appear to have construed Hewitt and Ketchum to mean that any time probable cause has developed, a defendant is "in custody," even when a defendant is nowhere near a law enforcement official. In Hewitt, however, we reiterated the basic framework that "a statement made by a defendant under custodial interrogation without a Miranda warning must be suppressed as unconstitutionally elicited."

18

Hewitt, 153 Hawai‘i at 43, 526 P.3d at 568 (emphasis added).  Our analysis concerning whether Miranda warnings were required in Hewitt was centered on whether the defendant, who was confined to a hospital bed with serious injuries, was "in custody" when questioned by police officers.  See Hewitt, 153 Hawai‘i at 43-46, 526 P.3d at 568-71 (holding that if a person is unable to leave a place of interrogation due to circumstances incident to medical treatment, determining whether the person is "in custody" under a totality of circumstances for purposes of article I, section 10 requires an inquiry into whether the person was at liberty to terminate the interrogation and cause officers to leave).

Hewitt clearly reiterated that Ketchum's bright-line rule for when a suspect is "in custody" applies "when probable cause to arrest exists upon an initial stop or detention."  Hewitt, 153 Hawai‘i at 43, 526 P.3d at 568 (emphasis added) (citing Ketchum, 97 Hawai‘i at 126, 34 P.3d at 1025).  Hewitt also said that if a detained person's responses to a police officer's questions provide the officer with probable cause to arrest, "the officer is – at that time – required to inform the detained person" of their Miranda rights.  Hewitt, 153 Hawai‘i at 43, 526 P.3d at 568 (second emphasis added) (citation omitted).

Thus, the Ketchum bright-line rule does not apply where probable cause exists but the police have not stopped or

detained the suspect, or have not otherwise deprived the suspect of freedom of action in any significant way. See Hewitt, 153 Hawai'i at 43, 526 P.3d at 568; Ketchum, 97 Hawai'i at 117-18, 34 P.3d at 1016-17 ("[T]he privilege against self-incrimination is jeopardized when an individual is taken into custody or otherwise deprived of [their] freedom by the authorities in any significant way and subjected to questioning[.]" (cleaned up)).

Here, the detectives directed CW to contact James, and James apparently made incriminating statements. CW was acting as a government agent, but there was no "initial stop or detention" or other deprivation of freedom of action at the time James made the statements. See Hewitt, 153 Hawai'i at 43, 526 P.3d at 568; Ketchum, 97 Hawai'i at 117-18, 34 P.3d at 1016-17. Therefore, regardless of whether probable cause to arrest existed at the time CW contacted James, James was not "in custody" and there was no "custodial" interrogation.[7] Hence, Miranda warnings were not required under either the federal or state constitutions.

---

[7] The State posits that we should set forth a bright-line rule that a suspect must be in the presence of, or in proximity to, law enforcement or "confined in a correctional facility" to be "in custody." Because we need not do so in this case and because it is possible to envision circumstances in which a suspect could be interrogated while deprived of freedom in a significant way by authorities without being in their presence, such as through use of technology, including electric fences, we decline to adopt the State's suggestion.

**B.    James's right to counsel had not attached**

Because it upheld the circuit court's suppression order based on the alleged violation of James's <u>Miranda</u> rights, the ICA did not address the circuit court's alternative ruling that James's right to counsel had been violated.  <u>James</u>, 2023 WL 3017974, at *1 n.4.  If James's right to counsel was violated, the circuit court's suppression order would be affirmed on this alternative ground.  We therefore address that issue.

Even when a defendant is not subject to custodial interrogation:

> An individual has a right to counsel under the [S]ixth [A]mendment to the United States Constitution and article I, section 14 of the Hawai'i State Constitution which guarantees an accused the right to assistance of counsel for [the accused's] defense.  However, this right attaches at critical stages of the criminal prosecution, only at or after the initiation of adversarial judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information or arraignment.

<u>State v. Luton</u>, 83 Hawai'i 443, 448, 927 P.2d 844, 849 (1996) (cleaned up).

Thus, the right to counsel attaches only after the initiation of adversarial judicial criminal proceedings.  Such proceedings had yet to be initiated at the time of the text messages between CW and James.  Therefore, the circuit court erred by suppressing the text messages based on its erroneous conclusion that James was entitled to counsel under the Sixth Amendment and article I, section 14.

## C. The ICA erred by concluding it did not have appellate jurisdiction over the circuit court's order denying the State's motion for reconsideration

Finally, we also address the State's question regarding the ICA's holding that it did not have appellate jurisdiction over the State's appeal of the circuit court's denial of the motion for reconsideration.

The "right of appeal in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision." Bohannon, 102 Hawaiʻi at 236, 74 P.3d at 988 (citation omitted). HRS § 641-13[8] enumerates when the State may appeal a criminal case from the district and circuit courts. Bohannon, 102 Hawaiʻi at 236, 74 P.3d at 988. "As a general rule, we strictly construe HRS § 641-13[.]" State v. Timoteo, 87 Hawaiʻi 108, 112, 952 P.2d 865, 869 (1997) (cleaned up).

> However, this strict construction rule, like the rule applicable to penal statutes generally, does not permit the court to ignore legislative intent in the face of statutory ambiguity, nor require the court to reject the construction

---

[8]   HRS § 641-13 provides in relevant part:

> An appeal may be taken by and on behalf of the State from the district or circuit courts to the intermediate appellate court, subject to chapter 602, in all criminal matters, in the following instances:
>
>     . . . .
>
>     (7) From a pretrial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property, in which case the appellate court shall give priority to the appeal and the order shall be stayed pending the outcome of the appeal[.]

that best harmonizes with the design of the statute or the
end sought to be achieved.

State v. Fukusaku, 85 Hawai'i 462, 492, 946 P.2d 32, 62 (1997)
(citations omitted).

Section 641-13 does not expressly provide for a right of
appeal from a motion for reconsideration.

We agree with the State that, pursuant to Bohannon, the ICA
nonetheless had appellate jurisdiction over the circuit court's
order denying the State's motion for reconsideration. In
Bohannon, the State's notice of appeal concerning the district
court's order granting the defendant's motions to suppress and
to dismiss did not expressly refer to the district court's
related order denying the State's motion for reconsideration.
102 Hawai'i at 235, 74 P.3d at 987. We held the prosecution's
notice of appeal was nonetheless sufficient to appeal that order
because the State's "intent to appeal" from the order denying
its motion for reconsideration could be "reasonably inferred
from its notice of appeal." Id. We agreed with the State that
its "right to appeal from the order granting [the defendant's]
motion to suppress under HRS § 641-13(7) encompasses a right to
appeal from the order denying its motion to reconsider the
district court's order granting the motion to suppress." 102
Hawai'i at 234, 74 P.3d at 986 (cleaned up). We noted that the
district court's order denying the motion for reconsideration

23

was "merely an extension of its order granting [the defendant's] motions to suppress and to dismiss." 102 Hawaiʻi at 235, 74 P.3d at 987.

Here, pursuant to <u>Bohannon</u>, the ICA had appellate jurisdiction over the circuit court's order denying the State's motion for reconsideration. Although HRS § 641-13 does not expressly authorize appeals by the State from orders denying motions to reconsider pretrial orders granting the suppression of evidence, we have held HRS § 641-13(7) implicitly encompasses a right to appeal from such orders. <u>Bohannon</u>, 102 Hawaiʻi at 234, 74 P.3d at 986.

The ICA determined it did not have jurisdiction over the order denying the State's motion for reconsideration based on HRAP Rule 4. <u>James</u>, 2023 WL 3017974, at *1 n.1. HRAP Rule 4(a), which applies to appeals of civil cases, contains a provision expressly addressing post-judgment motions. It provides in relevant part,

> (3) Time to appeal affected by post-judgment motions. If any party files a timely motion . . . to reconsider . . . and court or agency rules specify the time by which the motion shall be filed, then the time for filing the notice of appeal is extended for all parties until 30 days after entry of an order disposing of the motion. The presiding court or agency in which the motion was filed shall dispose of any such post-judgment motion by entering an order upon the record within 90 days after the date the motion was filed. If the court or agency fails to enter an order on the record, then, within 5 days after the 90th day, the clerk of the relevant court or agency shall notify the parties that, by operation of this Rule, the post-judgment motion is denied and that any orders entered thereafter shall be a nullity. The time of appeal shall run from the date of entry of the court or agency's order disposing of

24

the post-judgment motion, if the order is entered within the 90 days, or from the filing date of the clerk's notice to the parties that the post-judgment motion is denied pursuant to the operation of the Rule.

The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order.

The 90-day period shall be computed as provided in Rule 26 of these Rules.

HRAP Rule 4(b),[9] which applies to appeals of criminal cases, contains no similar provision.

---

[9] HRAP Rule 4(b) provides in full:

> **(b) Appeals in criminal cases.**
> (1) Time for filing. In a criminal case, the notice of appeal shall be filed within 30 days after entry of the judgment or order appealed from. However, if the notice of appeal is mailed, the notice of appeal shall be deemed timely filed if the mailing is postmarked within the time fixed for filing and is received by the clerk no later than 5 days after the postmarked date. For the purposes of calculating other deadlines in these Rules, the date of filing under this Rule shall be the date the document is received by the clerk.
> A motion for leave to file an interlocutory appeal from an order of the circuit court must be filed within 30 days of the court's entry of the order. If such a motion is filed and granted, then the notice of appeal shall be filed within 30 days after entry of the circuit court's order granting permission for leave to file an interlocutory appeal.
> (2) Effect of motions in arrest of judgment or for new trial. If a timely motion in arrest of judgment under Rule 34 of the Hawaiʻi Rules of Penal Procedure or for a new trial under Rule 33 of the Hawaiʻi Rules of Penal Procedure has been made, an appeal from a judgment of conviction may be taken within 30 days after the entry of any order denying the motion.
> (3) Entry of judgment or order defined. A judgment or order is entered within the meaning of this subsection when it is filed with the clerk of the court.
> (4) Premature notice of appeal. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be deemed to have been filed on the date such judgment or order is entered.
> (5) Extensions of time to file a notice of appeal. Upon showing of good cause, the circuit, district, or family court may, no later than 30 days after the time has

(continued. . .)

HRAP Rule 4(b), however, merely governs timing requirements for filing appeals in criminal cases.  See Bohannon, 102 Hawai'i at 235, 74 P.3d at 987.  In this case, there is no jurisdictional issue related to the timing of the State's filing of the notice of appeal.[10]  The State's April 11, 2022 notice of appeal expressly and timely appealed both the March 28, 2022 order granting James's motion to suppress and the April 4, 2022 order denying the State's motion for reconsideration.  And pursuant to Bohannon, HRS § 641-13(7) "encompasses a right" for the State to appeal from the circuit court's order denying the State's motion for reconsideration.  See Bohannon, 102 Hawai'i at 234, 74 P.3d at 986.

Therefore, the ICA erred in ruling it lacked appellate jurisdiction over the circuit court's order denying the State's motion for reconsideration of the order granting motion to suppress.  Based on our reasoning in Sections IV.A and B above,

---

(. . .continued)

        expired, on motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision (b).  Any such motion that is filed before expiration of the prescribed time may be ex parte unless the court otherwise requires.

[10]    As noted supra, the State filed its notice of appeal on April 11, 2022, less than 30 days after the filing of both the circuit court's order granting James's motion to suppress the text messages (filed on March 28, 2022) and order denying the State's related motion for reconsideration (filed on April 4, 2022).  See HRAP Rule 4(b)(1).

the circuit court also erred by denying the State's motion for reconsideration.

## V.    Conclusion

For the reasons explained above, we vacate the ICA's May 31, 2023 judgment on appeal as well as the circuit court's March 28, 2022 FOF/COL/Order and April 4, 2022 order denying the State's motion for reconsideration.  We remand to the circuit court for further proceedings consistent with this opinion.

Tracy J. Murakami            /s/ Mark E. Recktenwald
for petitioner

                             /s/ Sabrina S. McKenna
Christian G. Enright
for respondent               /s/ Todd W. Eddins

                             /s/ Lisa W. Cataldo

                             /s/ Clarissa Y. Malinao

