**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000500
29-AUG-2024
08:16 AM
Dkt. 110 SO**

NO. CAAP-20-0000500

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DAYTON YOKOTA, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1FFC-20-0000234)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth, and Nakasone, JJ.)

This appeal challenges Defendant-Appellant Dayton Yokota's (**Yokota**) convictions for two counts of Abuse of a Family or Household Member against his child, based on an allegedly defective complaint under State v. Thompson and allegedly insufficient evidence to reject Yokota's parental discipline defense. We affirm because Yokota's challenge to the

complaint was untimely, and there was sufficient evidence to support the convictions.

Yokota appeals from the July 23, 2020 "Judgment and Conviction and Sentence; Notice of Entry" (**Judgment**) entered by the Family Court of the First Circuit (**Family Court**).[1] Following a jury-waived trial, Yokota was convicted as charged and sentenced to probation with two days jail.

On appeal, Yokota raises three points of error,[2] contending that (1) the case must be dismissed pursuant to State v. Thompson because the complaint did not comply with Hawaii Revised Statutes (**HRS**) § 805-1;[3] (2) there was insufficient evidence that force was not justified as parental discipline under HRS § 703-309;[4] and (3) the Family Court abused its discretion by denying Yokota's Motion for New Trial on the basis of newly-discovered evidence.

---

[1] The Honorable Linda S. Martell presided.

[2] Yokota's points of error have been numbered. See Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (requiring numbered points of error).

[3] The previous version of HRS § 805-1 (2014) in effect at the time Yokota was charged, required that a complaint requesting issuance of a warrant for the accused, must either be "subscribed by the complainant under oath," or "made by declaration in accordance with the rules of court." In Thompson, issued in 2021 after Yokota's 2020 convictions, the supreme court held that a complaint that did not comply with HRS § 805-1 for lack of a supporting affidavit or declaration was "fatally defective," and could not be used to issue an arrest warrant or penal summons. 150 Hawaiʻi 262, 267-68, 500 P.3d 447, 452-53 (2021); see State v. Mortensen-Young, 152 Hawaiʻi 385, 387, 526 P.3d 362, 364 (2023) (clarifying that HRS § 805-1 applies only to complaints for a penal summons or an arrest warrants). The parties were permitted to file supplemental briefs to address Thompson.

[4] The parental discipline defense under HRS § 703-309(1) (2014), entitled "Use of force by persons with special responsibility for care, discipline, or safety of others," provides in pertinent part that the use of force is "justifiable" by a parent if "[t]he force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct[.]"

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Yokota's points of error as follows, and affirm.

On March 13, 2020, the State charged Yokota by Complaint with two counts of Abuse of Family or Household Members under HRS § 709-906(1) and (5)(a).[5]  The Complaint alleged that Yokota hit his then four-year-old daughter, A.Y., with a belt, on or about March 6, 2020 in Count 1, and on or about the time period between January 20, 2020 and January 22, 2020, in Count 2.  The record reflected that at the time of the incidents, Yokota and A.Y.'s mother, Kristi Kubota (**Mother**), were separated but shared custody of A.Y.; that Yokota lived with his mother, June Yokota (**June**), and his father, Wayne Yokota (**Wayne**); and that on days when Yokota had custody, A.Y. would stay with him at June and Wayne's home.

The Complaint was signed by a deputy prosecuting attorney but not subscribed under oath by a complainant or accompanied by a declaration pursuant to HRS § 805-1.  Based on the Complaint, the Family Court issued a March 19, 2020 penal summons to Yokota, which was served on April 8, 2020, compelling him to appear.

The following evidence was adduced at Yokota's July 2020 jury-waived trial.  As to Count 2 (January 2020), Mother testified that she discovered bruises on A.Y.'s back on January 22, 2020, after picking her up from a visitation with Yokota. The following day, Mother took A.Y. to Pali Momi Medical Center emergency room to have her examined, and Honolulu Police Department (**HPD**) Officer Geri Lacson (**Officer Lacson**) took

---

[5]     HRS § 709-906 (2014), entitled "Abuse of family or household members; penalty," provides that it is "unlawful for any person . . . to physically abuse a family or household member[.]"

photographs of A.Y.'s injuries.  As to Count 1 (March 2020), Mother testified that she again discovered bruises on A.Y.'s back on March 9, 2020, after picking her up from school following a weekend visitation with Yokota.  Later that same day, Mother took A.Y. to Pali Momi Medical Center, where HPD Officer Brian Sekiya (**Officer Sekiya**) took photographs of A.Y.'s injuries.  The photographs of A.Y.'s injuries taken by the officers on both occasions were admitted into evidence.

As to Count 2, Officer Lacson testified that:  the bruises on A.Y.'s back depicted in the photographs she took were generally consistent with what she personally observed at Pali Momi Medical Center, but were "darker in person"; and when the officer asked A.Y. whether her back hurt, A.Y. would not give an affirmative response but instead "giggled and shied away behind her mother[.]"

As to Count 1, Officer Sekiya testified that the bruises on A.Y.'s back depicted in the photographs he took were consistent with the "light bruising on [A.Y's] lower back area" that he personally observed at Pali Momi Medical Center; and "when [he] asked [A.Y.] questions, she was very shy . . . [and] would always look back at her mother."

As to Count 2, A.Y.--who was five years old at the time of trial--after being shown a photograph time-stamped 4:46 p.m. on January 21, 2020, depicting her playing with shells in her grandfather's garden, testified that Yokota hit her with a belt on that day, as follows:

> [YOKOTA'S COUNSEL]: . . . So when you were serving the shells, it was morning time?
>
> [A.Y.]: Yeah.  And after I played.  I played running on the grass.  And -- and -- after that we went in the house and -- and Daddy starts hitting me because -- (indiscernible).  And he starts hitting me.  Then I start getting sad because Daddy was hitting me.

> [YOKOTA'S COUNSEL]: Okay. So after you played with the shells, you were running around the house and then he started hitting you?
>
> [A.Y.]: Yeah. . . .

A.Y. described the "hitting" by "Daddy," or Yokota, as follows:

> [STATE]: Okay. Why was your back hurting that night?
>
> [A.Y.]: Because Daddy whacked it very hard.
>
> . . . .
>
> [STATE]: Okay. Now, you said Daddy whacked you. Did Daddy use anything to whack you?
>
> [A.Y.]: Like a belt.
>
> . . . .
>
> [STATE]: . . . So you said Daddy hit you with a belt. How many times did he -- do you remember? Is it a little or a lot?
>
> [A.Y.]: A lot.
>
> [STATE]: Okay. Did it hurt?
>
> [A.Y.]: Yeah.
>
> . . . .
>
> [STATE]: . . . [W]hen you said that your back was hurting to your Mommy, you said, was that because Daddy was hitting you with the belt?
>
> [A.Y.]: Uh-huh. . . .

A.Y. testified that she told Yokota that day, "Daddy, you need to go to a hitting doctor and a wine and alcohol--a hitting doctor, a wine doctor and--and an alcohol doctor and a smoking doctor because he likes to do all those stuff [sic] when he hits me."

As to Count 1, A.Y. was shown a photograph time-stamped March 7, 2020, 10:49 a.m., depicting her eating at a restaurant with Yokota and her aunt and uncle; a photograph time-stamped March 7, 2020, 12:48 p.m., depicting her grocery shopping with Yokota and June; and a photograph time-stamped

March 7, 2020, 4:31 p.m., of her flying a kite with Yokota. A.Y. testified that Yokota hit her later that day, as follows:

> [YOKOTA'S COUNSEL]: . . . So I showed you a picture of you drinking hot chocolate, flying a kite, and -- and grocery shopping. So during that day, did Daddy hit you?
>
> [A.Y.]: At the afternoon I was flying the kite, when Daddy hit me a lot.
>
> [YOKOTA'S COUNSEL]: Did Daddy hit you while you were flying the kite?
>
> [A.Y.]: No. That's after I fly the kite.
>
> [YOKOTA'S COUNSEL]: Okay. So after you flew the kite, Daddy decided to hit you?
>
> . . . .
>
> [A.Y.]: Yes.
>
> [YOKOTA'S COUNSEL]: Okay. Do you know why he hit you?
>
> [A.Y.]: I don't know why because he always hits me.

A.Y. testified the two times she went to the hospital were when her lower back "hurt" because Yokota "whacked it with his hand" and "hit" her "with the belt." She stated, "Daddy hits me with a really sore belt that he wears on his waist[,]" and because "it's a big belt[,]" "it hurts a lot more." A.Y. testified that both incidents occurred in the afternoon, when Yokota had been "drinking."

The defense called June and Yokota as witnesses, and both testified that Yokota had never used a belt to beat A.Y., or used any physical force to discipline A.Y. at any time. As to Count 2, June corroborated A.Y.'s testimony that A.Y. was playing with shells at her home on January 21, 2020, but testified that Yokota's demeanor toward A.Y. on that day was "normal[,]" and that to her knowledge, Yokota did not hit A.Y. on the remaining days of her visitation (January 22-23, 2020). As to Count 1, June also corroborated A.Y.'s testimony that on March 7, 2020, A.Y. had eaten at a restaurant with her family,

went grocery shopping, and flew a kite with Yokota, but testified that Yokota never "[got] upset at any time during this day[,]" that he never "[took] out his belt and start[ed] attacking [A.Y.] after she was flying the kite[,]" and that she never "[heard] any screaming or yelling from [A.Y.] during this time period[.]"

Yokota testified that he had never physically harmed A.Y., hit her with a belt, or physically disciplined her in any way. As to Count 2, he corroborated A.Y's testimony that A.Y. was playing with shells at his parents' home on January 21, 2020, but testified that later that day he gave A.Y. a bath, ate dinner with her, and put her to bed. He testified that he never became upset at A.Y. during her entire January 20-22, 2020 visitation. As to Count 1, Yokota testified that: on March 7, 2020, after flying a kite with A.Y., he ate dinner with her and their family; at no time during that day did he become upset at A.Y.; on March 8, 2020, A.Y. ran errands with his parents, took a nap, and went to a birthday party; and on March 9, 2020, he dropped A.Y. off at school.

At the conclusion of evidence on July 23, 2020, the Family Court found Yokota guilty on both counts, finding A.Y.'s testimony "very, very credible" and Yokota and June's testimony "not entirely credible," and concluding that the photographs showing the A.Y.'s bruises were "consistent with being hit by a belt."

On August 3, 2020, Yokota filed a Motion for New Trial, arguing that he should have been acquitted based on the parental discipline defense, and that he should be given a new trial on the basis of newly-discovered photographic evidence.[6]

---

[6]     The "newly-discovered" photograph was of A.Y. smiling, taken by Yokota's father and time-stamped 7:42 p.m. on March 7, 2020, which Yokota

On August 4, 2020, Yokota timely filed a Notice of Appeal from the July 23, 2020 Judgment.

After the appeal was filed, the Family Court heard argument on Yokota's Motion for New Trial on September 10 and 11, 2020, and issued its September 18, 2020 "Order Denying Motion for New Trial," and December 22, 2020 "Findings of Fact and Conclusions of Law" (**FOFs/COLs**).

1. **Yokota's HRS § 805-1 challenge to the Complaint was not a jurisdictional defect, and Yokota was required to bring a timely challenge under Hawai'i Rules of Penal Procedure (HRPP) Rule 12.**

Yokota argues for dismissal under State v. Thompson because the Complaint did not comply with HRS § 805-1. Yokota raised this issue for the first time on appeal.

Whether a complaint complied with an applicable standard and/or rule is a question of law we review de novo. Thompson, 150 Hawai'i at 266, 500 P.3d at 451. Yokota is correct that HRS § 805-1, which applied here where the Complaint was used to obtain a penal summons, was violated because the Complaint lacked a sworn affidavit or declaration. We conclude, however, that Yokota's HRS § 805-1 challenge fails because it is untimely.

HRPP Rule 12(b)(2) requires that challenges "based on defects in the charge" other than a failure "to show jurisdiction in the court or to charge an offense" "must be raised prior to trial[.]"[7] HRPP Rule 12(f) provides that a

---

argued contradicted A.Y.'s claim that Yokota had beaten her after taking a photograph of her on March 7, 2020 at 4:31 p.m.

[7]     HRPP Rule 12, entitled "Pleadings and Motions Before Trial; Defenses and Objections" provides in pertinent part:

> **(b) Pretrial motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be

party's failure to raise defenses or objections "which must be made prior to trial," "shall constitute waiver thereof[.]" Because Yokota did not file a motion to dismiss or otherwise challenge the Complaint prior to trial, HRPP Rule 12(f) waiver applies.

Yokota, however, argues that his HRS § 805-1 challenge is a "jurisdictional defect" that may be raised at any time, and he was not required to raise the issue prior to trial under HRPP Rule 12(b), as follows:

> In the case of an incomplete complaint, the case is never properly initiated and any judgment which results therefrom is null and of no effect. [State v.] Knoeppel, 71 Haw. [168,] 171, 785 P.2d [1321,] 1322 [(1990)]. Therefore, the failure to meet the requirements of HRS § 805-1 is a jurisdictional defect as the defective complaint failed to invoke the jurisdiction of the court and may be raised at any time. Schwartz [v. State], 136 Hawai'i [258,] 272, 281 n.42, 361 P.3d [1161,] 1175, 1184 n.42 [(2015)].

The authorities upon which Yokota relies, Knoeppel and Schwartz, do not support his contentions and are distinguishable.

Knoeppel involved a complaint that was not signed by the prosecutor, timely challenged as defective under HRPP Rule 7 via a motion to dismiss before the trial court. 71 Haw. at 169, 785 P.2d at 1321. On appeal, the Hawai'i Supreme Court concluded that the unsigned complaint was defective, rendering the conviction "null and of no effect." Id. at 171, 785 P.2d at 1322. Knoeppel did not discuss jurisdiction, or the lack

---

raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

  (1) defenses and objections based on defects in the institution of the prosecution;

  (2) defenses and objections based on defects in the charge (other than it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings);
  . . . .

(Emphases added.)

thereof; did not state that an incomplete complaint is a jurisdictional defect that may be raised at any time; and did not involve an untimely challenge as in this case.

Yokota's reliance on footnote 42 of Schwartz to argue that a complaint's failure to meet HRS § 805-1 requirements is a jurisdictional defect, is misplaced and unpersuasive. 136 Hawai'i at 281 n.42, 361 P.3d at 1184 n.42. In Schwartz, the Hawai'i Supreme Court noted that a "charging instrument may be so deficient that a court does not have jurisdiction over the case[.]" Id. at 272 n.25, 361 P.3d at 1175 n.25 (citation omitted). Deficiencies that rise to this jurisdiction-depriving level include: (1) where the charging instrument was never filed; (2) where the charging instrument charges "an offense that is not 'cognizable' under state law or an offense that was committed outside the [trial court's geographic jurisdiction]"; and (3) where the charging instrument charges an offense that is excluded from the trial court's jurisdiction by statute. Id. at 272 n.25, 281 n.42, 361 P.3d at 1175 n.25, 1184 n.42. None of these jurisdiction-depriving deficiencies identified in Schwartz apply here, where the Complaint against Yokota was filed; the charged offense was committed within the City and County of Honolulu, the Family Court's geographic jurisdiction; and the offense was allegedly committed by a parent against a child, within the Family Court's statutory jurisdiction under HRS § 571-14. Thus, the Complaint's non-compliance with HRS § 805-1 is not a "jurisdictional" defect that can be challenged at any time. See id.

State v. Dunn, 8 Haw. App. 238, 798 P.2d 908 (1990), issued shortly after the supreme court's Knoeppel decision, applies here and is dispositive. As in this case, Dunn involved an untimely challenge to a similarly defective complaint (i.e.,

one that was "not signed by the prosecutor or by the complaining witness"); but unlike Knoeppel, the complaint was never challenged in the trial court and was raised only on appeal. Id. at 240 n.3, 798 P.2d at 910 n.3. This court concluded that: "[u]nlike the defendant in *Knoeppel*, Defendant, here, did not raise the defect below before trial, as he was required to do pursuant to Rule 12(b)(2), HRPP" and "[t]herefore, he has waived the defect." Id. Here, Yokota did not timely raise his HRS § 805-1 challenge below, before trial as required by HRPP Rule 12(b), and only raised his challenge on appeal. Accordingly, the challenge is waived under HRPP Rule 12(f). See id.

### 2. There was sufficient evidence to support Yokota's convictions and the Family Court's rejection of the parental discipline defense.

Yokota argues that the Family Court erred in concluding that there was insufficient evidence to support application of the parental discipline defense. Yokota maintains that "he did not use any physical discipline against A.Y. at any time[,]" but argues in the alternative that even if he had "spanked" A.Y. with a belt, that use of force "was reasonably proportional to the misconduct being punished."

"[E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]" State v. Matavale, 115 Hawai'i 149, 157, 166 P.3d 322, 330 (2007) (citation omitted). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." Id. at 157-58, 166 P.3d at 330-31 (citation omitted).

Here, Yokota did not present evidence below that he ever physically disciplined A.Y. or of any misconduct by A.Y.

11

warranting parental discipline, for either count. The parental discipline defense requires any disciplinary force used, to be "reasonably related" to "the prevention or punishment of the minor's misconduct" before the defense may apply. HRS § 703-309(1). The record reflects Yokota testified that at no point during the relevant times did he physically discipline A.Y., nor was he ever "upset" at A.Y. or that A.Y. had acted "in a naughty way[.]" The Family Court found A.Y.'s testimony credible, and Yokota's not credible. We do not "pass upon issues dependent upon the credibility of witnesses" on appeal, as "this is the province of the trier of fact." State v. Sprattling, 99 Hawaiʻi 312, 317, 55 P.3d 276, 281 (2002) (cleaned up). Considering the evidence in the strongest light for the prosecution, there was sufficient evidence to support the convictions and the Family Court's rejection of the parental discipline defense. See Matavale, 115 Hawaiʻi at 157, 166 P.3d at 330.

### 3. We lack jurisdiction to review the denial of the motion for new trial.

The August 4, 2020 Notice of Appeal from the July 23, 2020 Judgment did not automatically appeal the subsequent September 18, 2020 order denying the August 3, 2020 post-judgment motion for a new trial. HRAP Rule 4(a)(3), governing *civil* appeals, provides that: "The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order." HRAP Rule 4(b) governing *criminal* appeals, however, "contains no similar provision." State v. James, 153 Hawaiʻi 503, 514, 541 P.3d 1266, 1277 (2024). Yokota did not appeal from the September 18, 2020 Order Denying Motion for New Trial or the December 22, 2020 FOF/COLs. Thus, this court lacks

jurisdiction to review the denial of the motion for new trial. See HRAP Rule 4(b)(1).

For the foregoing reasons, we affirm the July 23, 2020 "Judgment and Conviction and Sentence; Notice of Entry" entered by the Family Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, August 29, 2024.

On the briefs:

Alen M. Kaneshiro,
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge